## Docket Nos. 14-1078, 14-1098

# *United States Court of Appeals*
# *For The Federal Circuit*

PHIL-INSUL CORP., DBA INTEGRASPEC,

*Plaintiff-Appellant,*

v.

REWARD WALL SYSTEMS, INC.,

*Defendant-Appellee,*

NUDURA CORPORATION and POLYFORM, A.G.P. INC.,

*Defendants-Cross-Appellants.*

BUILDBLOCK BUILDING SYSTEMS, LLC,

*Defendant-Appellee,*

AMVIC CORPORATION,

*Defendant-Appellee.*

*Appeal from the United States District Court for the District of Nebraska in
Case No. 8:12-cv-0091, Judge Joseph F. Bataillon*

### JOINT BRIEF OF CROSS-APPELLANTS
### NUDURA CORP. AND POLYFORM, A.G.P. INC., AND DEFENDANT-
### APPELLEE AMVIC CORPORATION

RACHEL C. HUGHEY
CHRISTOPHER J. SORENSON
AARON M. JOHNSON
KATHERINE E. MULLER
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300

*Attorneys for Nudura Corp.
and Polyform, A.G.P. Inc.*

KORI ANNE BAGROWSKI
JAMES ROBERT SOBIERAJ
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Dr.
Suite 3600
Chicago, IL 60611
(312) 321-4200

*Attorneys for Amvic Corporation*

March 24, 2014

2014 – BACHMAN LEGAL PRINTING – FAX (612) 337-8053 – PHONE (612) 339-9518 or 1-800-715-3582

# CERTIFICATE OF INTEREST

Counsel for Cross-Appellant Nudura Corporation and Polyform, A.G.P. Inc.

certifies the following:

1. The full name of every party represented by us is:

   > Nudura Corporation
   > Polyform, A.G.P. Inc.

2. The name of the real party in interest represented by us is:

   > Nudura Corporation
   > Polyform, A.G.P. Inc.

3. All parent corporations and any other publicly held companies that own

   10 percent or more of the stock of the party or amicus curiae represented

   by me are:

   > The parent companies of Nudura Corporation are Plastiques
   > Cellularies Polyform, Inc. and 1391038 Ontario Ltd.
   >
   > No publicly held companies own 10% or more of the stock of
   > Nudura Corporation
   >
   > The parent company of Polyform, A.G.P. Inc. is 4225341 Canada
   > Inc.
   >
   > No publicly held companies own 10% or more of the stock of
   > Polyform, A.G.P. Inc.

4. The names of all law firms and the partners or associates that appeared

   for Polyform in trial court or are expected to appear in this court are:

   > Christopher J. Sorenson, Rachel C. Hughey, Aaron M. Johnson,
   > Katherine E. Muller, MERCHANT & GOULD P.C.

i

S. Calvin Capshaw, III, Elizabeth L. DeRieux, CAPSHAW
DERIEUX, LLP

Date: March 24, 2014        /s/Rachel C. Hughey
                            Rachel C. Hughey

## CERTIFICATE OF INTEREST

Counsel for Appellee, Amvic Corporation, certifies the following:

1.  The full name of every party represented by us is:

    Amvic Corporation

2.  There is no other real party in interest that is represented by us.

3.  There are no parent corporations or any other publicly held companies

    that own 10 percent or more of the stock of the party or amicus curiae

    that are represented by us.

4.  The names of all law firms and the partners or associates that appeared

    for Amvic in the trial court or are expected to appear in this Court are:

    Kori Anne Bagrowski and James Robert Sobieraj, BRINKS GILSON &
    LIONE

    Robyn Bowland and Luke Parsons, formerly of BRINKS GILSON &
    LIONE (then known as Brinks Hofer Gilson & Lione)


Date: March 24, 2014            /s/ Kori Anne Bagrowski
                                Kori Anne Bagrowski

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST (Nudura Corporation and Polyform, A.G.P. Inc. ...............................................................................i

CERTIFICATE OF INTEREST (Amvic Corporation) ........................................... iii

TABLE OF CONTENTS ...............................................................................iv

TABLE OF AUTHORITIES ........................................................................ vii

STATEMENT OF RELATED CASES ...................................................................1

STATEMENT OF JURISDICTION ....................................................................1

STATEMENT OF THE ISSUES .........................................................................2

INTRODUCTION ..........................................................................................2

COUNTERSTATEMENT OF THE FACTS AND CASE .......................................4

I.    Relevant Facts ...............................................................................4

    A.    The technology at issue and the prior art ...............................4

    B.    The '933 patent narrowly claimed ICFs with two or more rows having a recess of one row "adjacent" to a projection of the other row ......................................................................6

        1.    Overview of the '933 patent and its prosecution history ..........................................................................6

        2.    During the original prosecution, IntegraSpec narrowed its claims in response to a prior art rejection, limiting them to at least two row ICFs that are adjacent ...................................................................7

        3.    IntegraSpec tried unsuccessfully to claim a single row ICF during reexamination of the '933 patent ...................13

II.    Procedural History .........................................................................17

A.      The district court correctly construed the claim term "adjacent." ......17

B.      Based on its claim construction ruling, the district court granted the non-infringement summary judgment motions ...............21

C.      The district court denied Polyform's Rule 11 motion.........................22

SUMMARY OF THE ARGUMENT ......................................................23

ARGUMENT ..................................................................................26

I.     Standard Of Review.................................................................26

II.    The District Court Correctly Construed The Term "Adjacent" Consistently With The Intrinsic Evidence................................27

    A.      The words of the claims support the district court's construction ......27

        1.     The context of the surrounding words of the claim demonstrates that "adjacent" means "next to . . . on the same panel or sidewall." ...............................................28

        2.     IntegraSpec's proposed construction renders other parts of the claim superfluous...........................................30

    B.      The specification supports the district court's construction...............31

    C.      The prosecution history supports the district court's construction ........................................................................34

        1.     IntegraSpec disclaimed single row ICFs during the original prosecution................................................35

        2.     IntegraSpec also disclaimed single row ICFs in the reexamination..........................................................39

    D.      IntegraSpec's arguments are legally unsupportable...........................43

        1.     IntegraSpec's reliance on attorney argument is extrinsic evidence entitled to no weight ..................................44

2.      IntegraSpec's prosecution disclaimers are binding and, with the intrinsic evidence, control the claim construction ...... 45

3.      IntegraSpec did not act as its own lexicographer to give a term its non-ordinary meaning ................................................ 49

4.      IntegraSpec's attacks on the district court and the Patent Office examiner are unfounded ............................................... 50

III.    The Weakness Of IntegraSpec's Claim Construction Position Establishes That Rule 11 Sanctions Are Appropriate .................................. 51

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................. 53

CERTIFICATE OF SERVICE ............................................................................ 55

CERTIFICATE OF COMPLIANCE .................................................................... 56

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACTV, Inc. v. Walt Disney Co.*,
    346 F.3d 1082 (Fed. Cir. 2003) .........................................................28

*Amgen, Inc. v. Ariad Pharms., Inc.*,
    333 Fed. Appx. 549 (Fed. Cir. 2009).....................................................2

*Astrazeneca AB v. Mut. Pharm. Co.*,
    384 F.3d 1333 (Fed. Cir. 2004) .........................................................49

*Atofina v. Great Lakes Chem. Corp.*,
    441 F.3d 991 (Fed. Cir. 2006) ..........................................................35

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001) .........................................................49

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) .........................................................35

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006) .........................................................48

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
    629 F.3d 1278 (Fed. Cir. 2010) .........................................................48

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*,
    93 F.3d 766 (Fed. Cir. 1996) ............................................................30

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) .........................................................27

*Key Pharms. v. Hercon Labs. Corp.*,
    161 F.3d 709 (Fed. Cir. 1998) ..........................................................44

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
    No. 2012-1014, 2014 U.S. App. LEXIS 3176 (Fed. Cir. Feb. 21, 2014)
    (en banc)....................................................................................26

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (en banc) ............................................................26

*Mems Tech. Berhad v. ITC*,
    447 Fed. Appx. 142 (Fed. Cir. 2011) ..............................................................47

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) .......................................................................30

*Netword, LLC v. Centraal Corp.*,
    242 F.3d 1347 (Fed. Cir. 2001) .......................................................................31

*Norsyn, Inc. v. Desai*,
    351 F.3d 825 (8th Cir. 2003) ...........................................................................51

*Nystrom v. TREX Co., Inc.*,
    424 F.3d 1136 (Fed. Cir. 2005) .......................................................................46

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) .........................................................34, 35, 41

*Pause Tech. LLC v. TiVo Inc.*,
    419 F.3d 1326 (Fed. Cir. 2005) .......................................................................27

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
    587 F.3d 1324 (Fed. Cir. 2009) .......................................................................44

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) .......................................26, 27, 31, 47

*Primos, Inc. v. Hunter's Specialties, Inc.*,
    451 F.3d 841 (Fed. Cir. 2006) .........................................................................30

*Raylon LLC v. Complus Data Innovations, Inc.*,
    700 F.3d 1361 (Fed. Cir. 2012) .......................................................................51

*Regents of the Univ. of Cal. v. DakoCytomation Cal., Inc.*,
    517 F.3d 1364 (Fed. Cir. 2008) .......................................................................48

*Research Plastics, Inc. v. Fed. Packaging Corp.*,
    421 F.3d 1290 (Fed. Cir. 2005) .......................................................................32

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002) ........................................................36

*Robotic Vision Sys. v. View Eng'g, Inc.*,
    189 F.3d 1370 (Fed. Cir. 1999) ........................................................47

*SeaChange Int'l, Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) ...................................................36, 48

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003) ..........................................................35

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ........................................................35

*Tex. Digital Sys., Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) ........................................................49

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011) ...................................................46, 47

*Vitronics Corp v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ....................................................26, 27

*Warner-Lambert Co. v. Purepac Pharm. Co.*,
    503 F.3d 1254 (Fed. Cir. 2007) ..........................................................2

## STATUTES

28 U.S.C. § 455(a) .................................................................................50

35 U.S.C. § 102(b) .......................................................................6, 10, 14

35 U.S.C. § 103 .....................................................................................14

35 U.S.C. § 305 ...............................................................................15, 40

## OTHER AUTHORITIES

Rule 11 ..........................................................................................passim

Rule 54(b)..............................................................................................1

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action in the lower court was previously before this or any other appellate court.  Appellee Amvic Corporation ("Amvic"), and Cross-Appellants Nudura Corporation and Polyform, A.G.P. Inc. (collectively "Polyform"), are not aware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

Polyform and Amvic agree with the Jurisdictional Statement in the Opening Brief of Appellant ("Blue Br.").  Polyform and Amvic further state as follows.  The district court found that none of the accused products made by any of the Appellees infringe the asserted claims of the '933 patent.  (A3820-21; A4030.)  The parties then stipulated to entry of a final judgment pursuant to Rule 54(b) because there was no just cause for delay.  (A4339-40.)  Based on this stipulation, the court entered final judgment.  (A4341.)  Polyform then requested an amendment to the final judgment to clarify that the court's judgment with respect to the denial of Polyform's motion for Rule 11 sanctions was also final.  (A4342-43.)  The district court amended the judgment to state that final judgment had been entered on the issue of Rule 11 sanctions.  (A4347-48.)  A court may properly enter judgment under Rule 54(b) once it has ruled on the issue of non-

1

infringement. *Amgen, Inc. v. Ariad Pharms., Inc.*, 333 Fed. Appx. 549, 552 (Fed. Cir. 2009); *Warner-Lambert Co. v. Purepac Pharm. Co.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007).

## STATEMENT OF THE ISSUES

1.      Whether the district court correctly construed the claim term "adjacent" to mean "next to . . . on the same panel or sidewall," in a manner consistent with the claim language, specification, and prosecution history.

2.      Whether the district court erred in denying Polyform's motion for Rule 11 sanctions where IntegraSpec persisted in pursuing an objectively unreasonable claim construction and infringement position that was inconsistent with the language of the claims, the specification, and IntegraSpec's repeated concessions before the Patent Office that its claims did not include a single row ICF product.

## INTRODUCTION

The district court correctly construed the claim term "adjacent," and correctly found that Polyform and Amvic do not infringe U.S. Patent No. 5,428,933 ("the '933 patent") under that construction. The court carefully considered the claim language, specification, and prosecution history, and construed "adjacent" consistently with this intrinsic evidence. And the court properly rejected the litigation-driven arguments of Appellant Phil-Insul Corp., d/b/a IntegraSpec ("IntegraSpec"), which ignore the binding prosecution history of

these patent claims, and cast unwarranted aspersions on the district judge and the Patent Office examiner.

During prosecution, the Patent Office rejected IntegraSpec's multiple attempts to obtain a broad patent on insulated concrete forms ("ICFs") with a *single* row of projections and recesses along the top and bottom edges of each of the two panels that comprise the ICF. The issued '933 patent claims were explicitly limited to ICFs with at least *two* rows of alternating projections and recesses on the top and bottom edges of each panel, with each projection in a row being adjacent to a recess in the other row. Reexamination of the patent did not change, but rather affirmed, that IntegraSpec did not invent an ICF with a single row of recesses and projections on each panel.

The district court correctly construed the asserted claims consistently with IntegraSpec's amendments and arguments before the Patent Office and ruled that the accused *single* row products do not infringe IntegraSpec's *two* row claims literally or under the doctrine of equivalents.

IntegraSpec asks this Court to reverse the district court's claim construction of "adjacent" and enforce a claim scope far beyond what was granted by the Patent Office, both in the original prosecution as well as in the reexamination of the same claims. The district court properly reviewed and relied upon the evidence of record—including specific concessions by IntegraSpec during prosecution—in

3

reaching its claim construction.  The district court's claim construction should be affirmed.

## COUNTERSTATEMENT OF THE FACTS AND CASE

### I. Relevant Facts.

#### A.  The technology at issue and the prior art.

The technology here relates to insulated concrete forms ("ICFs").  (*E.g.*, A1813.)  ICFs are polystyrene blocks assembled at a construction site to create interlocking molds for wall construction.  (A1275.)  Liquid concrete is poured into the assembled molds to produce insulated concrete walls.  (A1777.)  ICFs have long been known and used in the construction industry.  (*See, e.g.*, A8, col. 1, ll. 14-31; A1635; A1640, col. 1, l. 16 – col. 2, l. 2.)  As of February 14, 1994—the filing date of the patent-in-suit—there was a crowded field of prior art.  (A8, col. 1, ll. 14-31; A1635; A1640, col. 1, l. 16- col. 2, l. 2.)

Prior art ICFs included Styrofoam panels or side members with top and bottom edges and interconnecting means on those edges.  The interconnecting means allowed the blocks or panels to be stacked on top of one another to create molds for receiving liquid concrete.  The prior art is replete with hollow, interconnecting blocks used as forms for pouring concrete walls.  Two prior art patents, U.S. Patent Nos. 4,894,969 ("Horobin") and 5,123,222 ("Guarriello"), are

of particular note here, and are addressed in more detail below. (A1625-33; A1635-42.)

Horobin disclosed an insulating block form for use in construction of concrete wall structures:



(A1636; *see also* A1635-42.) Guarriello disclosed foamed plastic hollow blocks connectable to one another and used as poured concrete forms:



(A1629; *see also* A1625-33.)  Faced with this crowded field of prior art,

IntegraSpec claimed only what it could—an ICF with at least two rows of

projections and recesses adjacent to each other on the same panel.

    B.    <u>The '933 patent narrowly claimed ICFs with two or more rows
having a recess of one row "adjacent" to a projection of the
other row.</u>

        1.    <u>Overview of the '933 patent and its prosecution history.</u>

On February 14, 1994, IntegraSpec filed U.S. Patent Application No.

195,017, which led to the patent-in-suit.  (A447.)  During examination, the Patent

Office examiner rejected the claims under 35 U.S.C. § 102(b).  (A524-25.)  In

response, IntegraSpec amended the claims, narrowing them to at least *two* row

ICFs having alternating recesses and projections where a recess of one row is

"adjacent" a projection of the other row.  (A529-30.)  IntegraSpec's application

6

was issued on July 4, 1995, as U.S. Patent No. 5,428,933 ("the '933 patent") for an "Insulating Construction Panel or Block." (A1.)

During a reexamination, IntegraSpec added independent claim 19, which included the term "adjacent." (A1537.) IntegraSpec distinguished Guarriello as having pairs of projections and recesses that are not "adjacent," and described "adjacent" as having a spatial meaning. (A845; A857; A866-67.) Later in the reexamination, IntegraSpec tried to substitute "transversely aligned" for "adjacent" in claim 19, but the examiner rejected the amendment as impermissibly broadening the claim. (A651.) IntegraSpec acquiesced, removing "transversely aligned" from the claim. (A644.) The reexamination certificate issued on September 21, 2010. (A12.)

> 2.    <u>During the original prosecution, IntegraSpec narrowed its claims in response to a prior art rejection, limiting them to at least two row ICFs that are adjacent.</u>

As filed, independent claim 1 and independent claim 4 (issued as claim 11) stated:

> 1.    In an insulating construction member having top and bottom edges and interconnecting means on said top and bottom edges, the improvement wherein said interconnecting means comprise alternating projections and recesses, said projections and recesses being of substantially the same dimension, and wherein said interconnecting means on said top and bottom edges are symmetrically arranged whereby said insulating construction member can be interconnected with a like member in a bi-directional or reversible manner.

4.      An insulating construction block comprising:
a pair of substantially parallel side members having top and
bottom edges;
joining means interconnecting said side members;
interconnecting means on said top and bottom edges, said
interconnecting means including at least one row of alternating
projections and recesses, said projections and recesses having
substantially the same dimensions;
wherein the interconnecting means on said top and bottom
edges are substantially symmetrically arranged whereby said
construction block can be interlocked with a like block in a bi-
directional or reversible manner.

(A461.)  Thus, originally, claim 1 referred to projections and recesses, but did not

require that these projections and recesses be organized on each panel in rows.

(*Id.*)  Claim 4 required "at least one row" of projections and recesses on an

insulating construction block having "parallel side members."  (*Id.*)  Neither claim

1 nor claim 4 originally included an "adjacent" limitation and neither claim

required two rows.  (*Id.*)

The specification described and showed ICFs as having two or more rows

(16) with "adjacent" projections (18) and recesses (20).  The specification included

drawings of two row ICF panels, both alone and in parallel with other two row ICF

panels, showing "adjacent" projections and recesses:



(A2-3; A468-69.)  Further, the specification disclosed: "interconnecting means on the top and bottom edges, the interconnecting means including at least one row of alternating projections and recesses, the projections and recesses having substantially the same dimension."  (A8, col. 1, l. 67 – col. 2, l. 3; A452, ll. 1-5.)

The specification also emphasized that the recesses and projections in the rows must be "adjacent" one another: "Where two rows of alternating projections and recesses are provided, preferably the adjacent pairs of each row are opposites, i.e., a recess of one row is preferably adjacent a projection of the other row.  Such an arrangement provides for a stronger interconnection between like insulating members." (A8, col. 2, ll. 21-26; A489.)  The specification further stated: "When two or more rows of projections 18 and recesses 20 are utilized the projections 18 and recesses 20 must alternate in both the x and y axis, i.e. a projection 18 of one row must be adjacent to a recess 20 of the other row as well as being adjacent to a recess 20 in the same row."  (A9, col. 4, ll. 62-67; A495, ll. 2-7.)

9

In a first Office Action, dated October 7, 1994, the Patent Office examiner rejected the claims under 35 U.S.C. § 102(b). The examiner rejected independent claims 1 and 4 (and a number of dependent claims) as being anticipated by Horobin, explaining that Horobin disclosed an "insulating construction block comprising *a pair of parallel insulation side members* (12, 14) having top an[d] bottom edges and both having interconnecting means, said interconnecting means at the top and bottom edges comprising *a row of alternating projections* (38, 45) and recesses (40, 46) with substantially the same dimension." (A524-25 (emphases added).)

The examiner also noted that Horobin disclosed forms that were "inherently to be reversibly interconnected over another like member." (A525.) The examiner additionally rejected a number of claims based on U.S. Patent No. 5,060,446 ("Beliveau"). (A524.)

The examiner suggested that dependent claims 7-9 could be allowable, noting that the cited prior art did not disclose a construction block with interconnecting means comprising *two* rows of projections and recesses wherein the projection of one row was "adjacent" to the recess of the other. (A525.) Specifically, the examiner explained:

> The prior art of record does not show[] and disclose[] the interconnecting means of an insulation construction material *including two rows of alternating projections and recesses, wherein said recess of one row is adjacent to said projection of the other row.*

10

(*Id.* (emphasis added).)

To overcome the Patent Office's rejection, on December 27, 1994,

IntegraSpec amended the language of both claims 1 and 4 to include the limitation

that the interconnecting means is comprised of "at least two rows of alternating

projections and recesses . . . wherein said recess of one row is adjacent said

projection of the other row." Specifically, claims 1 and 4 were amended to claim:

1. In an insulating construction member having top and bottom edges and interconnecting means on said top and bottom edges, the improvement wherein said interconnecting means comprise at least two rows of alternating projections and recesses, said projections and recesses being of substantially the same dimension, wherein said recess of one row is adjacent said projection of the other row, and wherein said interconnecting means on said top and bottom edges are [symmetrically] offset arranged such that said recess of one row on said top edge is opposed to said projection of an opposite row of said bottom edge; whereby said insulating construction member can be interconnected with a like member in a bi-directional or reversible manner.

4. An insulating construction block comprising: a pair of substantially parallel side members having top and bottom edges; joining means interconnecting said side members; interconnecting means on said top and bottom edges, said interconnecting means including at least two [one] rows of alternating projections and recesses wherein said recess of one row is adjacent said projection of the other row, said projections and recesses having substantially the same dimensions; wherein the interconnecting means on said top and bottom edges are substantially [symmetrically] offset arranged such that said recess of one row on said top edge is opposed to said projection of an opposite row of said bottom edge; whereby

11

> said insulating construction member can be interconnected with
> a like member in a bi-directional or reversible manner.

(A529-30, A544, A554 (added material underlined, removed material bracketed).)

As IntegraSpec explained, it was amending claim 1 expressly to overcome the

rejection:

> In the Action, the Examiner has applied two references, namely
> Beliveau '446 and Horobin '969 and has rejected various of the
> claims in view of these references (paragraphs 8 and 9 of the Action).
> In paragraph 10 of the Action[,] the Examiner indicates that claims 7
> to 9 contain allowable subject matter over the references cited and
> would be allowed if rewritten in independent form.
> In view of the above, Applicant has taken this opportunity to
> amend claim 1 to include the subject matter of previous claims 6 and
> 7 therein; previous claims 6 and 7 have thus been deleted as
> redundant. As claims 2 to 5, 8 to 13 and 16 to 20, in their amended
> form, all depend either directly or indirectly from amended claim 1,
> Applicant submits that these claims are also in good order and
> overcome the references cited.

(A533-34.) In view of the narrowing amendment, the Patent Office allowed the

amended claims. (A553.)

The '933 patent was originally issued on July 4, 1995, with 4 independent

claims—claims 1, 11, 17 and 18—and 14 dependent claims. (A10, col. 6, l. 8 -

A11, col. 8, l. 25.) Claims 2-10 depend from claim 1, and claims 12-16 depend

from claim 11. (*Id.*) As originally issued, independent claim 1 of the '933 patent

was directed to ICFs in which the interconnecting means on the top and bottom

edges of each panel "comprise[d] at least two rows of alternating projections and

12

recesses . . . <u>wherein said recess of one row is adjacent said projection of the other row</u>."  (A10, col. 6, ll. 11-15 (emphasis of added material).)

> 3.    <u>IntegraSpec tried unsuccessfully to claim a single row ICF during reexamination of the '933 patent.</u>

In 2001, IntegraSpec accused Appellee Reward Wall Systems, Inc. ("Reward Wall") of infringing the '933 patent.  (A209; A250.)  Reward Wall provided IntegraSpec with multiple prior art patents showing that the '933 patent is invalid.  Among these patents was the prior art Guarriello reference.  (A209.)  Thereafter, on October 31, 2002, IntegraSpec requested ex parte reexamination of the '933 patent based on Guarriello.  (A1575.)

On November 4, 2003, IntegraSpec added independent claim 19.  (A1537.)  As filed, independent claim 19 claimed a construction block that also contained a limitation, like claims 1 and 11, requiring at least two rows having projections and recesses with a recess of one row "adjacent" to a projection of the other row:

> 19.    An insulating construction block comprising:
> a pair of substantially parallel side members having top and bottom edges and a substantially planar outer surface and a substantially planar inner surface;
> joining means interconnecting said side members;
> interconnecting means on said top and bottom edges, said interconnecting means including at least two rows of alternating projections and recesses, each row comprising more than one projection and more than one recess, with such alternating projections and recesses being continuous and contiguous, wherein said recess of one row is adjacent said projection of the other row, said projections and recesses having substantially the same dimensions;

> wherein the interconnecting means on said top and bottom edges are substantially offset arranged such that said recess of one row on said top edge is opposed to said projection of an opposite row of said bottom edge; whereby said construction block can be interlocked with a like block in a bi-directional or reversible manner.

(*Id.*)

In a September 16, 2004 office action, the examiner rejected all of the pending claims, including an anticipation rejection of claim 19 under 35 U.S.C. § 102(b), based on Guarriello.  (A1506; A1510-11.)  On November 16, 2004, IntegraSpec amended claim 19, but retained the limitation relating to the adjacent rows.  (A1454-55.)  In the next office action, the examiner maintained the rejection of the original claims of the '933 patent, including claim 19 in light of Guarriello. (A1416; A1418.)

In June of 2005, IntegraSpec appealed this rejection to the Board of Patent Appeals and Interferences ("BPAI").  (A1414.)  The BPAI reversed the examiner's anticipation rejection, but entered a new rejection of the claims as obvious under 35 U.S.C. § 103 over the combination of Guarriello and Horobin.  (A1200.)

In a July 31, 2008 response following the appeal, IntegraSpec attempted to traverse the Section 103 rejection by distinguishing Guarriello.  (A845; A857; A866-68.)  Giving "adjacent" a spatial meaning, IntegraSpec distinguished Guarriello arguing that because "projections and recesses [in Guarriello] are arranged in pairs, the pairs are not adjacent and thus do not form a 'row.'"  (A845.)

IntegraSpec further argued that, with respect to its claims, "there are no spaces between the projections and alternating recesses -- they are not in spaced apart pairs of adjacent projections and recesses as in Guarriello." (A857.) IntegraSpec argued that Guarriello's interconnecting means did not disclose rows of continuous, immediately adjacent projections and recesses, but rather disclosed "spaced apart pairs." (*Id.*) That is, according to IntegraSpec, because the pairs in Guarriello were "spaced apart," they pairs were not "adjacent" to each other. (*Id.*; A866.)[1]

On February 5, 2008, IntegraSpec also tried to amend the "adjacent" claim limitation to substitute the term "transversely aligned." (A1062.) IntegraSpec explained that this amendment was "intended to cover a block in which the top two or bottom two edges of the panels have only one row of projections and recesses and thus the language 'at least two rows' covers two rows on one panel, or one row on each of two panels." (*Id.*)

On July 6, 2009, the examiner rejected the proposed amendment under 35 U.S.C. § 305. (A651.) The examiner explained that the proposed amendment—

---

[1] IntegraSpec incorrectly argues that "bi-directionality" is the central novelty of its invention. (*E.g.* Blue Br. at 17-20, 43-44.) IntegraSpec made no such claim during prosecution of its patent claims. During prosecution, IntegraSpec admitted that Guarriello taught a form that was both bi-directional and reversible. (A845; A864; *see also* A49, l. 7.)

removal of the term "adjacent" and replacing it with "transversely aligned"—
would remove the limitation that "said recess of one row is adjacent said projection
of the other row," and would therefore impermissibly expand the scope of the
claim. (*Id.*)

On August 7, 2010, IntegraSpec conceded, and amended claim 19 to restore
the original "adjacent" language. (A644.) The reexamination certificate was
issued on September 21, 2010 (A12), with the "adjacent" requirement present in
both claims 1 and 19 (A13, col. 1, ll. 39-41; A14, col. 3, ll. 4-6).

After the first reexamination, claim 1 read as follows, with the added
language underlined, removed language bracketed, and the phrases using
"adjacent" in boldface:

> 1.     In [an] <u>a bi-directional and reversible</u> insulating construction
> member having <u>substantially planar ends and</u> top and bottom
> edges and interconnecting means on said top and <u>on said</u>
> bottom edges, the improvement wherein <u>each</u> said <u>top</u>
> interconnecting means [comprise] <u>and each said bottom</u>
> <u>interconnecting means has a pattern, each pattern comprising</u> **at**
> **least two <u>longitudinally extending</u> rows of alternating<u>,</u>**
> **<u>continuous, immediately adjacent</u> projections and recesses<u>,</u>**
> <u>extending continuously along the entire length of said top and</u>
> <u>bottom edges, the end projection in one row flush with at least a</u>
> <u>portion of one of said end planes, within each said pattern each</u>
> <u>of</u> said projections and recesses <u>in each one of said at least two</u>
> <u>rows within said pattern</u> being of substantially the same
> dimension, **wherein <u>within each said pattern</u> said recess of**
> **one row is adjacent said projection of the other row**,
> and wherein said interconnecting means <u>patterns</u> on said top
> and bottom edges are <u>the same and are</u> offset arranged such that
> said recess of one row <u>in said pattern</u> on said top edge is

16

> opposed to said projection of an opposite row [of] <u>in said</u>
> <u>pattern on</u> said bottom edge; whereby said insulating
> construction member can be interconnected with a like member
> in a bi-directional [or] <u>and</u> reversible manner.

(A13, col. 1, ll. 27-47.)

The '933 patent is the subject of an ongoing second reexamination, initiated by Reward Wall.[2]  (A4328; Blue Br. at 5.)  The '933 patent expired on February 14, 2014.  (*See* A1.)

## II.    Procedural History.

A.    <u>The district court correctly construed the claim term "adjacent."</u>

In its Complaint, filed in the Eastern District of Texas in February 2011, IntegraSpec accused Polyform and Amvic of infringing claims 2 and 7-10 of the '933 patent, all of which depend from claim 1.  On April 8, 2011, the defendants filed a motion to transfer venue.  On March 6, 2012, the action was transferred to the District of Nebraska.

The parties jointly moved for an early construction of three claim terms, including "adjacent."[3]  The parties' respective proposed constructions for "adjacent" were:

---

[2] In the pending reexamination, claims 1, 3, 7, and 8 have been cancelled.  Claims 2, 5, 6, 9, and 10, depending from claim 1, have been rejected.  Claims 11, 13-16, and 19-26 have also been rejected.

17

|            | Polyform's and Amvic's Proposed Construction | IntegraSpec's Proposed Construction |
|------------|----------------------------------------------|-------------------------------------|
| "adjacent" | Next to, on the same panel or sidewall | Having X and Y axes, the recess in one row along the Y axis alternates with (a) a projection in the same row along the Y axis and (b) a projection in the other row along the x-axis |

The primary difference in the parties' proposed constructions was that the claimed bi-directional and reversible insulating construction member with "at least two longitudinally extending rows of alternating, continuous, immediately adjacent projections and recesses . . . said recess of one row adjacent said projection of the other row" would not cover a cover a single row under defendant's proposed construction, but could under IntegraSpec's proposed construction.   (A1614-18; A1659-63; A1732-36.)

In an attempt to regain claim scope covering a single row on each ICF panel, IntegraSpec incorrectly argued that the patentee had acted as its own lexicographer

---

[3] The parties also requested that the district court construe the claim term "substantially the same dimension" and another claim term not at issue on appeal. IntegraSpec's appeal of the district court's construction of "substantially the same dimension" does not affect the district court's finding of no infringement with respect to Polyform and Amvic, nor was that construction the basis for Polyform's Rule 11 motion.  Thus, "substantially the same dimension" is not addressed in this brief.  However, Amvic joined the arguments at the district court on the "substantially same dimension" limitation, and concurs with the separate brief filed by Appellees Reward Wall and BuildBlock responding to IntegraSpec's appeal of the district court's correct construction of "substantially the same dimension."

and had defined "adjacent" as having a positional meaning, rather than its ordinary, spatial meaning.  (A1659-60.)

In a joint claim construction brief, the defendants disagreed with IntegraSpec.  (A1614; A1732-35.)  Among other things, the defendants noted that IntegraSpec's construction would render the term "alternating" superfluous, that during prosecution IntegraSpec had specifically amended its claims to require *two* rows in order to avoid a prior art reference having one row of projections and recesses on each panel, and that when IntegraSpec attempted to replace "adjacent" with "transversely aligned" the Patent Office rejected the amendment as broadening the claim scope.  (A1615-16; A1733-36.)

The district court held a *Markman* hearing on June 29, 2012.  (A35.)  At the hearing, IntegraSpec acknowledged that the plain meaning of "adjacent" indicates nearness.  (A52, ll. 3-5.)

The district court issued its claim construction ruling in a 31-page opinion on July 19, 2012.  (A1777.)  The court's opinion considered the intrinsic evidence, including the claim language, specification, and prosecution history, and all of the parties' arguments with respect to that evidence.  (A1786-96.)  The court adopted Polyform and Amvic's proposed claim construction for "adjacent":

> In Claim 1, "adjacent" in the phrase "wherein within each said pattern said recess of one row is *adjacent* said projection of the other row" is construed to mean: wherein within each said pattern said recess of one

19

row is *next to* said projection of the other row *on the same panel or sidewall.*

(A1806.)

In adopting a construction for "adjacent" that required at least two rows on the same panel or sidewall, the court explained:

> the prosecution history makes clear that[] the patent office rejected Claims 1 and 4 because H[o]robin '969 already disclosed a construction block [where] each panel of the block had one row of alternating projections and recesses; the patentee inserted the limitation "at least two rows" into Claim 1 to distinguish it from H[o]robin '969 and to convince the patent office to allow the claim....

(A1794.)  The court further explained that "the prosecution history makes clear that the patentee agreed to limit the scope of Claim 1 to cover construction members with at least two rows of projections on a panel . . . in order to overcome the patent office's rejection."  (*Id.*)

The district court also credited the Patent Office's conclusion that for "transversely aligned"—the claim language substitution attempted by IntegraSpec during prosecution—did not equate to "adjacent."  (A1795.)  Rather, the "prosecution history [] makes clear . . . that substituting 'transversely aligned' for the word 'adjacent' would broaden Claim 19, and thus, that the patent office would have rejected the claim if 'adjacent' meant 'transversely aligned.'"  (*Id.*)

The court further held that construing "adjacent" to mean "alternates," as IntegraSpec proposed, would result in a different construction in litigation than had

20

been used before the Patent Office, and, therefore, adopting such a construction

would be improper. (*Id.*) As the court further reasoned, IntegraSpec's proposed

construction would render "alternating" superfluous:

> Construing "adjacent" to mean "alternates" in both the x and y axes
> would render the term "alternating," which Claims 1 and 19 already
> contain, superfluous. In contrast, construing "adjacent" to have a
> spatial meaning would give meaning to both "adjacent" and
> "alternating": "alternating" would describe the positional relationship
> of the projections and recesses; "adjacent" would describe their spatial
> relationship."

(A1788-89.)

   B.   <u>Based on its claim construction ruling, the district court granted the
        non-infringement summary judgment motions.</u>

On August 3, 2012, following the claim construction ruling, Polyform

moved for summary judgment of non-infringement, both literally and under the

doctrine of equivalents. (A1808.) On September 10, 2012, Amvic moved for

summary judgment of non-infringement, both literally and under the doctrine of

equivalents. (A2466.) The other defendants also moved for summary judgment of

non-infringement. (A2297; A2662; A2986.)

The district court granted summary judgment as to all the movants. (A3820-

21; A4030.) Because the court found that there was no infringement, it did not

reach the issue of invalidity. (*See* A4339-40.) On appeal, IntegraSpec does not

challenge the district court's findings of no infringement should the claim

construction issue be affirmed.

C.   The district court denied Polyform's Rule 11 motion.

Soon after the lawsuit was filed, and prior to transfer of the case to Nebraska, Polyform notified IntegraSpec it intended to seek Rule 11 sanctions. Polyform explained that the asserted claims of the patent-in-suit indisputably require ICFs having *two* or more rows of projections and recesses on each panel. (*See* A348; A307-08.)  Polyform further noted that all of Polyform's products contain only *one* row of projections and recesses on each panel.  (*See id.*; A308; *see also* A1818-20.)  Thus, as Polyform explained, there was no objective basis for the claims against Polyform, in violation of Rule 11.  (A348.)

IntegraSpec refused to dismiss the action so Polyform filed its Rule 11 motion.  (A304.)  Polyform argued that its single row product could not infringe the asserted claims of the '933 patent because the claims could not cover a single row product.  (A306-09; *see also* A3826-27.)  IntegraSpec responded that Rule 11 motions are "normally deferred until the conclusion of the case."  (A353.)  IntegraSpec also admitted that its amendments and argument during prosecution meant that issued claim 11 (prosecuted as claim 4) could not cover Polyform's accused one row product:

> The language "one row" was amended to "two rows"– and for that reason the claim does ***not*** read on the Nudura [Polyform] one-row Accused Product.  *IntegraSpec once more agrees that the amendment limited original Claim 4 to a block having two rows*. Claim 4 was issued as Claim 11 in the '933 patent.

22

(A362 (bold in original, italics added).)  But IntegraSpec argued that it was not

asserting claim 11 against Polyform and that the same disputed language in claim 1

could have a different scope.  (*Id.*)  The Rule 11 motion was not decided before the

case was transferred to Nebraska.

Following the grant of summary judgment, Polyform requested and was

granted leave to file a supplemental brief in support of its outstanding Rule 11

motion.  (A3823; A4349-50.)  The district court referred the motion to the

magistrate judge, who recommended denying the motion.  (A3976.)  The district

court adopted the magistrate's recommendation.  (A4324.)

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's construction of "adjacent."  The

district court construed "adjacent" in its spatial sense to mean "next to . . . on the

same panel or sidewall," which is consistent with the claim language, specification,

and prosecution history of the '933 patent.

The language of claim 1 alone demonstrates that IntegraSpec's proposed

construction cannot be correct.  IntegraSpec effectively argues that "adjacent"

should mean "alternating," but the claim uses "alternating" elsewhere.  The

specification also explains that when there are two rows "of alternating projections

and recesses," the adjacent pairs from the two rows "are opposites, i.e., a recess of

one row is preferably adjacent a projection of the other row."  Because the claims

themselves and the specification describe projections and recesses as both "adjacent" and "alternating," these two terms presumptively have different meanings, which IntegraSpec ignores.

Contrary to IntegraSpec's position, in using "i.e.," the patentee was not clearly acting as his own lexicographer. Nothing in the passages cited demonstrates that, as IntegraSpec asserts, the patentee intended to give "adjacent" a positional rather than a spatial meaning.

The specification supports the district court's construction in another way as well. It states that when two or more rows of projections and recesses are present, "a projection 18 of one row must be adjacent to a recess 20 of the other row as well as being adjacent to a recess 20 in the same row." IntegraSpec has admitted that adjacent within a row means closely spaced, as opposed to spaced apart, and thus necessarily on the same panel. "Adjacent" as applied to projections and recesses of two different rows should be interpreted consistently.

The prosecution history further supports the district court's construction. As filed, claims 1 and 4 did not require two rows that are adjacent. The "adjacent" limitation was added to overcome prior art that *did* contain two rows, but did not contain two rows that were adjacent. During reexamination, IntegraSpec tried to amend claim 19 to substitute the term "transversely aligned" for "adjacent." However, the examiner rejected the amendment as impermissibly attempting to

24

enlarge the scope of the claim by encompassing single row configurations. The examiner's rejection demonstrated his clear and correct understanding that the claim term "adjacent" has a spatial meaning as used in the '933 patent.

IntegraSpec's arguments challenging the district court's claim construction are unsupported by the evidence. IntegraSpec does not acknowledge the effect of its disclaimers and amendments during the prosecution history and faults the district court for giving those arguments their proper weight. IntegraSpec also does not explain the redundancies inherent in its proposed construction, which would render portions of the claim superfluous. The court properly recognized that IntegraSpec did not act as its own lexicographer to re-define "adjacent" by using the term "i.e." in the specification. The district court correctly construed "adjacent" and correctly rejected IntegraSpec's proposed construction. This Court should affirm the district court's construction of "adjacent," the basis of the district court's rulings that Polyform and Amvic did not infringe the asserted claims of the '933 patent.

Indeed, IntegraSpec's arguments are so weak, it was an abuse of discretion to deny Polyform's request for Rule 11 sanctions. IntegraSpec continued to assert a claim construction and related infringement contentions that were directly contrary to the prosecution history. IntegraSpec amended its claims to avoid the one row prior art. During reexamination, IntegraSpec was told that it could not

25

recapture a one row configuration by changing "adjacent" to "transversely aligned" because that would broaden the claim. Despite the Patent Office's clear statement that "adjacent" and "transversely aligned" are not synonyms, IntegraSpec continued to insist that they are throughout claim construction, summary judgment, and on appeal.

## ARGUMENT

### I.    Standard Of Review.

Claim construction is reviewed de novo. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, No. 2012-1014, 2014 U.S. App. LEXIS 3176, at *35 (Fed. Cir. Feb. 21, 2014) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). Claims are to be interpreted consistent with their meaning to one of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Id.* at 1312 (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A proper claim construction analysis must take into account the patent's intrinsic evidence. *Phillips*, 415 F.3d at 1319. The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Id.* at 1314-17.

## II. The District Court Correctly Construed The Term "Adjacent" Consistently With The Intrinsic Evidence.

### A. The words of the claims support the district court's construction.

A court's claim construction analysis should begin with the words of the claim. *Vitronics*, 90 F.3d at 1582; *see also Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (internal quotation omitted). Construing a claim limitation inconsistently with other limitations of the same claim is improper. *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005).

There is no dispute that the ordinary meaning of "adjacent" has a spatial context (A52, ll. 3-5), as interpreted by the district court. Further, the district court's construction of "adjacent" to mean "next to . . . on the same panel or sidewall" properly accounts for the context of the terms used in claim 1 and gives specific meaning to each of the claim terms. IntegraSpec's proposal, on the other hand, renders claim limitations superfluous.

27

1.    The context of the surrounding words of the claim demonstrates that "adjacent" means "next to . . . on the same panel or sidewall."

In determining the ordinary and customary meaning of a given claim term, the context of the surrounding words of the claim must be considered.  *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).

Issued claim 1, from which all asserted claims depend, requires:

1.    In a bi-directional and reversible insulating construction member having substantially planar ends and top and bottom edges and interconnecting means on said top and on said bottom edges, the improvement wherein each said top interconnecting means and each said bottom interconnecting means has a pattern, each pattern comprising at least two longitudinally extending rows of alternating, continuous, immediately adjacent projections and recesses, extending continuously along the entire length of said top and bottom edges, the end projection in one row flush with at least a portion of one of said end planes, within each said pattern each of said projections and recesses in each one of said at least two rows within said pattern being of substantially the same dimension, wherein within each said pattern said recess of one row is **adjacent** said projection of the other row, and wherein said interconnecting means patterns on said top and bottom edges are the same and are offset arranged such that said recess of one row in said pattern on said top edge is opposed to said projection of an opposite row in said pattern on said bottom edge; whereby said insulating construction member can be interconnected with a like member in a bi-directional and reversible manner.

(A13, col. 1, ll. 27-47 (emphasis added).)  The district court's construction of "adjacent" to mean "next to . . . on the same panel or sidewall" (A1806) properly

accounts for the context of the terms used in claim 1 and gives specific meaning to each of the claim terms.

There is no dispute that the "two longitudinally extending rows" refer to parallel rows of alternating projections and recesses. (A857; A1752-53.) Claim 1 is directed to the structure of an "insulating construction member" (A13, col. 1, ll. 27-28), which the patent recognizes includes a block or a panel (A8, col. 1, ll. 60-62). In the claim's description of its "improvements," it requires the top and bottom edges to have a pattern. This pattern is further described with "each pattern comprising at least two longitudinally extending rows of alternating, continuous, immediately adjacent projections and recesses . . . wherein within each said pattern said recess of one row is adjacent said projection of the other row." The claim language does not support a pattern made up of two rows where the alternating projections and recesses would be "adjacent" in one direction (X) but not the other (Y), as IntegraSpec suggests. Nor does it disclose that the two "adjacent" rows could be separated and not on the same panel.

Further, claim 1 specifically requires that this pattern, on both the top and bottom edges, have at least two longitudinally extending rows. (A13, col.1, ll. 29-32.) Thus, to form the pattern on each top and bottom side, the two rows must be next to each other on the same panel. In other words, because the top and bottom of each panel requires a pattern, and at least two rows are required to form a

pattern, each panel must have at "two longitudinally extending rows." Again, the district court's construction harmonizes with the plain claim language, which dictates the two rows must be on same panel. The district court carefully and correctly followed the claim language's guidance in defining "adjacent."

> 2. IntegraSpec's proposed construction renders other parts of the claim superfluous.

The district court was also correct in concluding that the claim language supports that "adjacent" means something different from "alternating," and further was correct in rejecting IntegraSpec's proposed construction. It is erroneous to construe a claim term in a manner that renders other parts of the claim superfluous. *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006); *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005); *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996).

IntegraSpec's proposed construction of "adjacent," "the recess in one row along the Y axis alternates with: (a) a projection in the same row along the Y axis and (b) a projection in the other row along the X axis," effectively requires "adjacent" to mean "alternating." If "adjacent" were to mean "alternating" in the X and Y axes, there would be no need to separately specify that the projections and recesses are "alternating." This construction would render the explicit reference to "alternating" projections and recesses superfluous, which would be improper. The

30

district court properly rejected IntegraSpec's construction, which is inconsistent with the claim language. (A1788-89.)

      B.    <u>The specification supports the district court's construction.</u>

The district court's construction is also consistent with the meaning of "adjacent" as used in the specification. A patent's "claims are directed to the invention that is described in the specification," and "they do not have meaning removed from the context from which they arose." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). After the claims themselves, the specification is highly relevant to claim construction. *Phillips*, 415 F.3d at 1316.

    The specification uses "adjacent" to define the spatial relationship between the projections and recesses of the two rows on each panel. It explains that "[w]here two rows of alternating projections and recesses are provided, preferably the adjacent pairs of each row are opposites, i.e. a recess of one row is preferably adjacent a projection of the other row. Such an arrangement provides for a stronger interconnection between like insulating members." (A8, col. 2, ll. 21-26.) The specification further explains that, in addition to having two rows with "alternating" projections and recesses, the projections and recesses of one row are "adjacent" the projections and recesses of the other. Consistent with the claim language, "adjacent" and "alternating" have different meanings. The rows of projections and recesses are both "alternating" and, separately, "adjacent."

In addition, according to the specification "[w]hen *two or more rows* of projections 18 and recesses 20 are utilized the projections 18 and recesses 20 must *alternate in both the x and y axis*, i.e. a projection 18 of one row must be *adjacent to a recess 20 of the other row* as well as being *adjacent to a recess 20 in the same row*." (A9, col. 4, ll. 62-67 (emphasis added).) There is no dispute that "adjacent" along the y axis means "on the same panel." (A1750; A1752-53.) In fact, during claim construction, IntegraSpec admitted that in the context of the "immediately adjacent" projections and recesses within a row, it intended that use of "adjacent" to mean not spaced apart. (A1752-53.) Because the term "adjacent" should have the same meaning everywhere that it is used in the specification, *see Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1295-96 (Fed. Cir. 2005), the adjacency of the projections and recesses *within* a row must be construed identically to adjacency *between* the two rows.

IntegraSpec has never contended, and the specification does not support, that any substantial gap between projections and recesses within a row can be present. "Adjacent" would be used inconsistently in the specification if "adjacent" along the transverse (x) axis were to include a separation between a recess and projection that is many times greater than any separation between an "adjacent" recess and projection along the longitudinal (y) axis. The district court rejected IntegraSpec's

32

proposed inconsistency, and instead correctly provided a meaning for "adjacent" that is consistent with the entirety of the specification.  (A1788-89.)

The district court's construction is also supported by Figures 3 and 4 of the '933 patent, illustrating the arrangement of interconnecting means 16, including two rows of alternating projections 18 and recesses 20.  The '933 specification only teaches "adjacent" projections and recesses on the same panel, either separated by a sealing member (e.g., Fig. 3) or in contact with one another (e.g., Fig. 4).



Fig. 3          Fig. 4

(A4.)  The above figures show a cross-section view of two panels stacked on top of one another.  (A4; A9, col. 4, ll. 21-27.)  In both figures, the first and second rows are labeled accordingly.  The red portions in Figures 3 and 4 show the projection (18) of the first row on the top panel fitting into the recess (20) of the first row on the bottom panel, and the recess (20) of the second row on the top panel receiving the projection (18) of the second row on the bottom panel.  (A4; A10, col. 5, ll. 7-35.)  In Figure 3, the two rows on each panel are separated by a narrow sealing member (22).  (A4; A10, col. 5, ll. 27-31.)  In both cases, two rows are being shown on the top and bottom edges of each of the panels.  (A4.)

Nothing in the specification suggests that a projection on *one panel* is "adjacent" to a recess on *another panel*, the two panels spaced apart by a large cavity, as IntegraSpec's proposed construction contemplates.[4]

C.     The prosecution history supports the district court's construction.

The doctrine of prosecution disclaimer prohibits patentees from using claim construction to recapture claim scope given up during prosecution.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) ("where the patentee

---

[4] Indeed, the specification teaches away from adjacent rows being separated by a large cavity because such a configuration would provide weaker interconnectivity and defeat one of the stated purposes of the invention.  (A8, col. 2, ll. 21-26.)  That is, the specification indicates that the greater the separation between a recess in one row from a projection in another, the weaker the "interconnection between [the] like insulating members."  (*Id.*)

has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender"); *see also Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1377-79 (Fed. Cir. 2008) (limiting claim construction under prosecution disclaimer because Plaintiff "cannot recapture claim scope disavowed during prosecution to prove infringement"); *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 998 (Fed. Cir. 2006) (same); *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994-96 (Fed. Cir. 2003) (same).

The district court thoroughly considered IntegraSpec's arguments and amendments made to the claim language, both during the original examination and reexamination. (A1791-95.) The court correctly ruled that the prosecution history for the '933 patent demonstrated that IntegraSpec used "adjacent" to have a spatial meaning indicating closeness, as the court's construction requires. (A1791.)

1.    <u>IntegraSpec disclaimed single row ICFs during the original prosecution.</u>

Statements of scope in the prosecution history dictate the correct claim construction. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002); *see also Omega Eng'g*, 334 F.3d at 1327 (explaining a "statement is a deliberate surrender of claim scope, unmistakable in its effect because it is not suitable to multiple interpretations"). "Where an applicant argues that a claim

possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language." *SeaChange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005); *see also Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("Explicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations. . . .").

As discussed above, during the original prosecution of the '933 patent, IntegraSpec amended the language of originally filed claims 1 and 4 to require at least *two adjacent rows* of projections and recesses to overcome the examiner's prior art rejection based on Horobin and Beliveau. (A529-30.) The prosecution history prevents IntegraSpec from asserting a claim construction that seeks to recapture claim scope covering a single row of projections and recesses on each panel or sidewall.

Originally filed claim 1 did not contain any requirement that there be multiple rows of projections and recesses or that they be disposed in a particular way relative to one another. (A461.) It only referred to an interconnecting means with alternating projections and recesses. (*Id.*) IntegraSpec amended the claim to overcome the examiner's prior art rejection based on Horobin, which showed a *single* row of alternating projections and recesses on each panel or sidewall in a

block with *two* non-adjacent rows.  (A524-25.)  IntegraSpec's amendment

incorporated the requirement that at least *two rows* that were *adjacent*:



(A529-30 (highlighting added).)

IntegraSpec's current argument that its claims can cover non-adjacent rows

is directly contrary to the prosecution history.  Indeed, Horobin specifically

disclosed two parallel *non-adjacent* rows (one on each panel):



(A1636.)

The examiner understood Horobin to disclose an ICF with a single row on

each panel, and IntegraSpec agreed. Moreover, IntegraSpec amended claim 1 to

include language requiring "at least two rows of alternating projections and

recesses . . . wherein said recess of one row is adjacent said projection of the other

row." (A529.) IntegraSpec knowingly and explicitly conceded that the purported

invention would not include a single row configuration, and surrendered any claim

scope that included a single row configuration for its interconnecting means.

Indeed, IntegraSpec admitted that its amendments and arguments during

prosecution meant that claim 4, issued as claim 11, could not cover a one row

product:

38

> The language "one row" was amended to "two rows"– and for that reason the claim does **not** read on the Nudura [Polyform] one-row Accused Product. IntegraSpec once more agrees that the amendment limited original Claim 4 to a block having two rows. Claim 4 was issued as Claim 11 in the '933 patent.

(A1909.) Like claim 4, IntegraSpec added two rows during prosecution of claim 1. Like claim 4—issued as claim 11—the amendment limited claim 1 to a construction member with two rows and does not read on one row accused products.

The district court properly considered this disclaimer in reaching its construction, holding that:

> the prosecution history makes clear that[] the patent office rejected Claims 1 and 4 because [Horobin] already disclosed a construction block [where] each panel of the block had one row of alternating projections and recesses; the patentee inserted the limitation 'at least two rows' into Claim 1 to distinguish it from [Horobin] and to convince the patent office to allow the claim.

(A1794.)

> ### 2. IntegraSpec also disclaimed single row ICFs in the reexamination.

During reexamination, IntegraSpec made additional amendments and arguments attempting (for the second time) to claim a single row configuration. The district court correctly considered this second unsuccessful attempt to claim a single row configuration in arriving at its construction, which correctly equates "adjacent" to spatial closeness. IntegraSpec tried to amend claim 19, seeking to

replace the term "adjacent" with "transversely aligned." (A1024.) In support of

the amendment, IntegraSpec argued:

> Claim 19 includes the limitations set forth in Claim 1 but additionally includes the limitation that the recess of one row is "transversely aligned with" the projection of the other row. The prior language used the word "adjacent." The claim is intended to cover a block in which the top two or bottom two edges of the panels have only one row of projections and recesses and thus the language "at least two rows" covers two rows on one panel, or one row on each of two panels. While the word "adjacent," according to the Board, may include a space between two objects that are next to one another, in this case, the cavity, Patentee believes that another way of expressing the alternation in projections and recesses in a transverse direction is the term "transversely aligned."

(A1062.) In other words, IntegraSpec attempted (for the second time during

prosecution) to convince the Patent Office that its patent included a single row

ICF.

The examiner rejected IntegraSpec's attempt under 35 U.S.C. § 305 as

impermissibly enlarging the scope of the claim(s) being reexamined. As the

examiner explained, the proposed amendment—removal of the term "adjacent"

and replacement with "transversely aligned"—would remove the limitation that

"said recess of one row is adjacent said projection of the other row," and would

therefore impermissibly expand the scope of the claim. (A651.) The examiner

clearly understood that the claim term "adjacent" had a spatial meaning, or, as the

district court correctly construed it, "next to . . . on the same panel or sidewall."

IntegraSpec acquiesced in the examiner's rejection, and in response, "removed the words 'transversely aligned with' and [] substituted therefor 'adjacent;' the word 'adjacent' appears in the '933 patent Claim 1, 'transversely aligned' does not." (A644.) Thus, the language that IntegraSpec attempted to add was not added and claim 1 (for the second time) remained limited to two row products.

The rejection, and subsequent re-amendment, establishes explicitly that the term "adjacent" is not equivalent to "transversely aligned." IntegraSpec cannot recapture subject matter that it disclaimed during prosecution. *Omega Eng'g*, 334 F.3d at 1323-24.

The spatial meaning of "adjacent," as in the district court's construction "next to . . . on the same panel or sidewall," is also supported by other arguments made by IntegraSpec during prosecution. During reexamination prosecution, IntegraSpec stated that the projections and recesses described in the Guarriello patent are in pairs, and that the pairs were not "adjacent" to each other. (A845.) Figure 9 (below) of the Guarriello patent shows a pair of ribs 270, 272 (shown in green) and a pair of channels 276, 280 (shown in yellow). The blue area highlights the space between the pairs of ribs and channels:



FIG-9

(A1629.) According to IntegraSpec's arguments during the reexamination, these pairs of ribs and channels are not "adjacent" because they are spaced apart. (A857.) The space between the pairs, in IntegraSpec's view, rendered them non-adjacent. (A866.) By describing what does not constitute "adjacent" in reference to Guarriello, IntegraSpec defined "adjacent" precisely in line with the district court's construction.

IntegraSpec also argued that because of the spaces in Guarriello, it provided less interlocking strength than IntegraSpec's configuration. IntegraSpec stressed that adjacent projections and recesses provide the most strength and are thus the most desirable (A866-67), lending further support to the district court's conclusion that "adjacent" is intended to convey spatial closeness.

IntegraSpec admits that during prosecution it used the term "adjacent" in its commonly understood spatial meaning. Specifically, IntegraSpec admitted "the patentee used the term 'adjacent' in its alternative sense of spatial." (A1753.) IntegraSpec attempts to distance itself from its later inconsistent position by

42

suggesting that it was only "a single instance." (*Id.*) This "single instance" of spatial meaning is entirely consistent with the spatial meaning used throughout prosecution.

IntegraSpec's amendments, its own use of the term in distinguishing the prior art, and the examiner's determination that "adjacent" is not equivalent to "transversely aligned" demonstrate the district court correctly found that the prosecution history dictates "adjacent" means next to on the same panel or sidewall.

D.    IntegraSpec's arguments are legally unsupportable.

IntegraSpec tried and failed, twice, to claim a single row ICF configuration during prosecution. It made the same failed argument two more times before the district court—once during claim construction, and again during summary judgment briefing. In four volleys, IntegraSpec has tried (and failed) to lay claim to a single row configuration. This appeal is the fifth time IntegraSpec seeks to claim that which it did not invent—a single row configuration.

Beginning with its Statement of Facts, and continuing throughout its briefing, IntegraSpec makes statements and arguments that are unsupported by the record in this case. Its mischaracterizations about the scope of its claims and the novelty of its invention are not and cannot be substantiated by any evidence.

1.    <u>IntegraSpec's reliance on attorney argument is extrinsic evidence
       entitled to no weight.</u>

Contrary to the discussion in this brief, which relies on the intrinsic evidence

alone, much of IntegraSpec's discussion of the alleged "Technology," found in its

"Statement of Facts" (Blue Br. at 7-12), is not a recitation of facts at all.  Rather, it

is an attempt to re-characterize its alleged invention by citing, not to the '933

patent or its prosecution history, but instead, by citing to the argumentative slides

used by counsel at the *Markman* hearing.

Self-serving extrinsic evidence is entitled to no weight.  *See Key Pharms. v.*

*Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998) ("[I]f the meaning of a

disputed claim term is clear from the intrinsic evidence—the written record—that

meaning, and no other, must prevail; it cannot be altered or superseded by witness

testimony or other external sources simply because one of the parties wishes it

were otherwise."); *see also Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d

1324, 1332 (Fed. Cir. 2009) (affording no weight to "attorney argument lacking

evidentiary support").

IntegraSpec's discussion of the "Claims" in its "Statement of Facts" (Blue

Br. at 12-14) relies on a manufactured "ILLUSTRATION 3," purporting to show

that claim one covers both a one row configuration and a two row configuration,

which is not what the '933 patent depicts or claims at all.  The '933 patent depicts,

describes, and claims *two* rows on a panel, *not* the one row creatively colored in by IntegraSpec's counsel during litigation.

In the "Introduction" to its "Statement of Facts," IntegraSpec mischaracterizes its alleged claimed invention as a "novel interconnecting means" that "comprises one or more rows of projections and recesses on each panel that interlock with a like form." (Blue Br. at 6-7.) This is *not* the language used in claim 1, as discussed more fully above. In particular, the pertinent claim language calls for "at least two longitudinally extending rows." (A13, col. 1, l. 32.) IntegraSpec's mischaracterization permeates the arguments throughout its brief.

IntegraSpec's subjective, litigation-inspired arguments addressing the scope of the claims are entitled to no weight. The intrinsic evidence supports the district court's adoption of Amvic's and Polyform's claim construction, and also refutes IntegraSpec's unsupportable arguments.

> 2. IntegraSpec's prosecution disclaimers are binding and, with the intrinsic evidence, control the claim construction.

IntegraSpec argues that the court's construction of the "adjacent" limitation "demonstrates a failure to understand the law" and renders dependent claims 2 and 3 "nonsensical and redundant." (Blue Br. at 23-24.) IntegraSpec's criticism of the district court has no basis in fact.

According to IntegraSpec, the district court's "adjacent" construction, which requires that at least two rows be on the same panel, renders claim 2 nonsensical

because claim 2 discloses a block with two panels, and "each of said panels comprising at least one longitudinally extending row." (Blue Br. at 24.) IntegraSpec further argues that claim 3 is redundant because it requires panels with patterns, and "each of said patterns comprising at the least two longitudinally extending rows." (Blue Br. at 25.)

Dependent claim 2 adds the limitation that the member from independent claim 1 is a block, and dependent claim 3 adds the limitation that the member from independent claim 1 is a panel. (A13, col. 1, ll. 50,60.) Thus, IntegraSpec is wrong that the dependent claims do not add limitations to independent claim 1. In any event, as noted above, claim 3 has been cancelled in the pending reexamination.

Further, while dependent claims *generally* further limit the claimed subject matter, representations made during patent procurement are binding and trump this general rule. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) (affirming the district court's construction, which was in accord with statements made in response to the examiner's rejection on prior art, which narrowed the claims). IntegraSpec is "not entitled to a claim construction divorced from the context of the written description and prosecution history." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) (rejecting arguments to

broaden the ordinary meaning of the term "board" beyond the prosecution history's and written description's support).

That the dependent claims do not further narrow the "adjacent" construction that requires at least two rows on a panel does not mean the limitation is meaningless. Indeed, claim 2 would be redundant under IntegraSpec's proposed construction. If claim 1—which requires two rows—could cover a single row panel that is not adjacent to a second single row panel, as IntegraSpec argues, it would result in an independent claim with the exact same scope as what IntegraSpec argues is the scope of claim 2. This too would be improper. *See Mems Tech. Berhad v. ITC*, 447 Fed. Appx. 142, 151 (Fed. Cir. 2011) (unpublished) (noting that a construction of patent claims which makes dependent claims in the same patent redundant "is disfavored" and construing independent claim to avoid rendering a dependent claim redundant); *Phillips*, 415 F.3d at 1324-25 (Fed. Cir. 2005) (same); *Robotic Vision Sys. v. View Eng'g, Inc.*, 189 F.3d 1370, 1376 (Fed. Cir. 1999) (same).

The purpose of the prosecution history is to exclude claim interpretations that have been disclaimed, *Phillips*, 415 F.3d at 1317, and positions at odds with the disclaimer should be rejected. *See Typhoon*, 659 F.3d at 1381. IntegraSpec's litigation arguments therefore should be rejected as contrary to the prosecution

history, where IntegraSpec specifically and clearly narrowed its original claim to a two row configuration so that it could overcome prior art rejections.

The court in *Curtiss-Wright Flow Control Corp. v. Velan, Inc.* explains the relationship between independent claims, narrowing dependent claims, and claim differentiation. 438 F.3d 1374, 1380-81 (Fed. Cir. 2006). The two primary considerations are: "(1) claim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous; and (2) claim differentiation cannot broaden claims beyond their correct scope." *Id.* at 1381 (internal quotations omitted). Accordingly, IntegraSpec's improper use of claim differentiation cannot justify its arguments to broaden the claim scope. *Regents of the Univ. of Cal. v. DakoCytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) ("the doctrine of claim differentiation is 'not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.'") (quoting *SeaChange*, 413 F.3d at 1369); *see also ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1285-87 (Fed. Cir. 2010) (concluding that distinguishing arguments made during prosecution regarding "low flow rate" limited the term's scope).

IntegraSpec imposed limitations on its claim scope through its arguments and actions in obtaining the '933 patent. IntegraSpec would like now to attribute

its actions to district court error, but the district court's claim construction correctly reflects that IntegraSpec did not obtain a patent on a single row configuration on an ICF.

### 3. IntegraSpec did not act as its own lexicographer to give a term its non-ordinary meaning.

IntegraSpec mistakenly argues that the abbreviation "i.e." in the specification was intended to give the term "adjacent" its non-ordinary meaning. In its strained argument, IntegraSpec attempts to align itself with patentees who acted as their own lexicographers. However, contrary to *Astrazeneca AB v. Mut. Pharm. Co.*, the case it relies on (Blue Br. at 27), IntegraSpec did not "clearly set forth an explicit definition of the term different from its ordinary meaning." 384 F.3d 1333, 1337 (Fed. Cir. 2004) (quoting *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002)).

The record is devoid of sufficiently clear notice that would alert one of reasonable skill of a new definition. *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). There is *nothing* in the specification passages IntegraSpec cites that clearly suggest that IntegraSpec intended to define "adjacent" as "alternating" in the transverse axis. IntegraSpec cites the following passage as a definition:

> When two or more rows of projections **18** and recesses **20** are utilized the projections **18** and recesses **20** must alternate in both the x and y

axis, i.e. a projection **18** of one row must be adjacent to a recess **20** of the other row as well as being adjacent to a recess **20** in the same row.

(Blue Br. at 29.)  Specifically, IntegraSpec argues the patentee defined "adjacent" to mean only that projections and recesses have to *alternate* in both the x and y axes.  (*Id.* at 29-30.)  IntegraSpec's focus on the "i.e." in this passage does not support its argument.  This passage in no way defines "adjacent," let alone provides a definition that would be different from the term's ordinary meaning.  Indeed, this passage further supports the district court's correct construction of "adjacent" to mean "next to . . . on the same panel or sidewall" because it recognizes that when two rows are used, the projections are adjacent both in the x and y directions.  The district court correctly rejected IntegraSpec's attempt to bend the specification to try to suit its improper proposed construction.

4.      IntegraSpec's attacks on the district court and the Patent Office examiner are unfounded.

Overshadowing IntegraSpec's arguments is its attack on the district court's integrity (Blue Br. at 15-16) and the patent examiner's capability (*id.* at 66-67).  IntegraSpec improperly attacks Chief Judge Smith Camp's impartiality in her decisions, without any factual foundation whatsoever.  (*Id.* at 15-16.)  The simple act of recusal under 28 U.S.C. § 455(a) is not evidence of bias.

Like its attacks on the district court's impartiality, IntegraSpec unwarrantedly and improperly attacks the work done by the examiner based on the

ethnicity of his name and his alleged "limited verbal English language skills." (Blue Br. at 66-67.)  *Ad hominem* attacks such as these are the hallmark of desperation, and have no proper place in this appeal.

## III.    The Weakness Of IntegraSpec's Claim Construction Position Establishes That Rule 11 Sanctions Are Appropriate.[5]

Courts in the Eighth Circuit apply an objective reasonableness standard in determining whether conduct violates the requirements of Rule 11.  *Norsyn, Inc. v. Desai*, 351 F.3d 825, 831 (8th Cir. 2003).  Under this standard, "there is a threshold below which a claim construction is so unreasonable that no reasonable litigant could believe it would succeed and thus warrants Rule 11 sanctions." *Raylon LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (internal quotation omitted).

The claim construction IntegraSpec advanced is so unreasonable that no reasonable litigant could believe it would succeed.  As discussed above, IntegraSpec's position was clearly contrary to the weight of the evidence and could not have prevailed.  IntegraSpec's reliance on it was objectively unreasonable and warrants Rule 11 sanctions.

During prosecution, IntegraSpec responded to a rejection over Horobin, which discloses a single row configuration, by amending the claims to particularly

---

[5] Amvic did not file a Rule 11 motion, and does not join in this section of the brief.

require two rows.  IntegraSpec admitted that it surrendered claims to a one row configuration.  (A1968; Blue Br. at 43-44.)  During reexamination, IntegraSpec attempted—but failed—to recapture the one row configuration by replacing "adjacent" with "transversely aligned."  (A1062; A651.)  IntegraSpec nevertheless pursued that claim scope through claim construction at the district court.  Again, it was told that its claims did not cover a single row configuration.

Even after claim construction, at the summary judgment stage, IntegraSpec insisted that a single row was equivalent to the two rows claimed.  (A1949-53; A1973-75.)  The district court again rejected IntegraSpec's argument, and held that prosecution history estoppel prohibited IntegraSpec from pursuing that equivalence claim.  (A3817-19.)  IntegraSpec has not appealed the district court's finding that there is no literal or equivalents infringement under its construction.

While the district court's decision of whether to award Rule 11 sanctions is reviewed under a deferential standard, here the magistrate erred in relying on the fact that a one row configuration is disclosed in the '933 patent's specification, and Polyform's awareness of this disclosure, to determine that IntegraSpec's continued infringement assertions were reasonable and non-frivolous.  (A3973.)  The mere disclosure of a one row configuration in the specification does not dictate the scope of the claims.  The whole of the intrinsic record demands a different result.

IntegraSpec pursued a claim scope it disclaimed during prosecution through reexamination, claim construction, summary judgment, and now on appeal. These actions are objectively unreasonable and the district court accordingly erred in denying Polyform's motion for sanctions pursuant to Rule 11. After this Court's review of the record, Polyform asks that the Court find IntegraSpec's advancement of claim scope it tried and failed to obtain before the Patent Office was objectively unreasonable warranting Rule 11 sanctions. In the alternative, because the court's Rule 11 decision was erroneous at least because it failed to recognize that disclosure in the specification does not equate to claim scope, at a minimum the Rule 11 issue should be remanded to the district court for reconsideration using proper legal analysis.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons set forth herein, Polyform and Amvic respectfully request that this Court affirm the district court's construction of "adjacent." Polyform additionally requests that this Court reverse the district court's denial of Polyform's motion for Rule 11 sanctions.

Date:  March 24, 2014

Respectfully submitted,

By: s/ Rachel C. Hughey
Rachel C. Hughey (Lead Attorney)
rhughey@merchantgould.com
Christopher J. Sorenson

csorenson@merchantgould.com
Aaron M. Johnson
ajohnson@merchantgould.com
Katherine E. Muller
kmuller@merchantgould.com
MERCHANT & GOULD P.C.
3200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.332.5300
Facsimile: 612.332.9081

ATTORNEYS FOR NUDURA
CORPORATION AND POLYFORM,
A.G.P. INC

- AND -

s/Kori Anne Bagrowski
Kori Anne Bagrowski
kbagrowski@brinksgilson.com
James Robert Sobieraj
jrs@brinksgilson.com
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Dr., Suite 3600
Chicago, Illinois 60611
(312) 321-4200

ATTORNEYS FOR AMVIC
CORPORATION

# CERTIFICATE OF SERVICE

I, Rachel C. Hughey, hereby certify that on this 24th day of March, 2014, a copy of the Joint Brief of Cross-Appellants Nudura Corp. and Polyform, A.G.P. Inc., And Defendant-Appellee Amvic Corporation was filed electronically with the Clerk of Court using the CM/ECF system, which will send a Notice of Docket Activity to the following, who are CM/ECF registrations:

Paul Adams (*adamspatentlaw@gmail.com*)
The Adams Law Firm
3800 Osuna Blvd. NE, Suite 2
Albuquerque, NM 87109

Michael Thomas Cooke (*mtc@fsclaw.com*)
Brett Michael Pinkus (*pinkus@fsclaw.com*)
Friedman, Suder & Cooke
604 East 4th Street, Suite 200
Fort Worth, TX 76102

Michael R. Annis (*mike.annis@huschblackwell.com*)
Andrew R. Gilfoil (*gilfoil@huschblackwell.com*)
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

David M. Sullivan (*david.sullivan@crowedunlevy.com*)
Harvey D. Ellis, Jr. (*harvey.ellis@crowedunlevy.com*)
Drew T. Palmer (*drew.palmer@crowedunlevy.com*)
Crowe & Dunlevy
1800 Mid-America Tower
20 North Broadway Ave.
Oklahoma City, OK 73102

/s/ Rachel C. Hughey
Rachel C. Hughey

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FEDERAL CIRCUIT RULE 32(a)**

Certificate of Compliance with Type Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    - this brief contains 11,407 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of the Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    - this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14 Times New Roman font.

Dated: March 24, 2014

/s/ Rachel C. Hughey
Rachel C. Hughey
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081