**Case Nos. 14-1078, 14-1098**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

PHIL-INSUL CORP., DBA IntegraSpec,

Plaintiff-Appellant/Cross-Appellee,

v.

REWARD WALL SYSTEMS, INC., BUILDBLOCK BUILDING SYSTEMS, LLC and AMVIC CORPORATION,

Defendants-Appellees,

NUDURA CORPORATION and POLYFORM, A.G.P. INC.,

Defendants/Cross-Appellants.

On Appeal from the United States District Court
for the District of Nebraska
Case No. 8:12-cv-0091
The Honorable Joseph F. Bataillon

## ANSWER BRIEF OF DEFENDANTS-APPELLEES REWARD WALL SYSTEMS, INC. AND BUILDBLOCK BUILDING SYSTEMS, LLC

David M. Sullivan
Harvey D. Ellis, Jr.
Crowe & Dunlevy, P.C.
20 North Broadway, Suite 1800
Oklahoma City, Oklahoma 73102
Telephone: 405.235.7700
Fax: 405.239.6651
david.sullivan@crowedunlevy.com
harvey.ellis@crowedunlevy.com

**ATTORNEYS FOR APPELLEE
BUILDBLOCK BUILDING
SYSTEMS, LLC**

Michael R. Annis
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: 314.345.6000
Fax: 314.345.6060
mike.annis@huschblackwell.com

**ATTORNEY FOR APPELLEE
REWARD WALL SYSTEMS, INC.**

March 24, 2014

## CERTIFICATES OF INTEREST

Counsel for Defendant-Appellee BuildBlock Building Systems, LLC certifies the following:

1. The full name of every party represented by us is:

   BuildBlock Building Systems, LLC

2. The name of the real party in interest represented by us is:

   BuildBlock Building Systems, LLC

3. All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   BuildBlock Building Systems, LLC does not have a parent company and no publicly held companies own 10% or more of the stock of BuildBlock Building Systems, LLC

4. The names of all law firms and the partners or associates that appeared for BuildBlock Building Systems, LLC in trial court or are expected to appear in this court are:

   David M. Sullivan, Harvey D. Ellis, Jr., Anton J. Rupert, Drew T. Palmer, and Tynia A. Watson at Crowe & Dunlevy, P.C., 20 N. Broadway Ave., Suite 1800, Oklahoma City, OK 73102

Date: March 24, 2014                    s/David M. Sullivan _____
                                        David M. Sullivan

i

Counsel for Defendant-Appellee Reward Wall Systems, Inc. certifies the following:

1. The full name of every party represented by us is:

   Reward Wall Systems, Inc.

2. The name of the real party in interest represented by us is:

   Reward Wall Systems, Inc.

3. There are no parent corporations or other publicly held companies that own 10 percent or more of the stock of Reward Wall.

4. The names of all law firms and the partners or associates that appeared for Reward Wall in trial court or are expected to appear in this court are:

   Michael R. Annis, Andrew R. Gilfoil, Andrew D. Weeks, David M. Newman, HUSCH BLACKWELL LLC, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105

   J. Thad Heartfield, M. Dru Montgomery, HEARTFIELD LAW FIRM, 2195 Dowlen Road, Beaumont, TX 77706

   Victoria H. Buter, KUTAK, ROCK LAW FIRM, 1650 Farnam Street, Omaha, NE 68102-2186

Date: March 24, 2014                    s/Michael R. Annis
                                        Michael R. Annis

# TABLE OF CONTENTS

CERTIFICATES OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ....................................................................vi

STATEMENT OF RELATED CASES.................................................. viii

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUES ..............................................................1

JOINDER IN SECTIONS OF CROSS-APPELLANT'S BRIEF ......................1

COUNTER-STATEMENT OF THE CASE AND RELEVANT FACTS ..........2

I.    Introduction..................................................................................2

II.   Background .................................................................................8

    A.    The '933 Patent and the Reexamination History ...........................8

        1.    The Specification of the '933 Patent........................................9

        2.    The First Reexamination ....................................................9

            a.    IntegraSpec's arguments during reexamination .......10

            b.    Proceedings before the BPAI......................................12

            c.    Post-BPAI proceedings...............................................14

            d.    The Notice of Allowance.............................................16

    B.    The District Court's Claim Construction .....................................17

    C.    Bidirectionality and Reversibility ....................................18

SUMMARY OF ARGUMENT ...............................................................20

ARGUMENT ......................................................................................23

I.    Standard of Review.......................................................................23

**II.    The District Court Correctly Construed the Term "Substantially the Same Dimension"** ........................................................24

    **A.    The Words of the Claims Support the District Court's Construction** ...............................................................25

    **B.    The Specification Supports the District Court's Construction** ...............................................................27

    **C.    The Prosecution History Compels the District Court's Construction** ...............................................................28

        **1.    IntegraSpec's Definition** .........................................30

        **2.    IntegraSpec's confession of its efforts to impermissibly broaden claim scope** .......................32

        **3.    The BPAI relied on IntegraSpec's original definition** .........34

**III.    IntegraSpec's Arguments Regarding the Proper Construction of "Substantially the Same Dimension" Are Improper and Should Be Rejected** ............................................................35

    **A.    There was no "attorney mistake" when IntegraSpec selected its proposed definition of "dimension"** ...............35

    **B.    IntegraSpec cannot escape its confessions in reexamination** ........37

    **C.    IntegraSpec is estopped from recapturing claim scope it disavowed during reexamination** .......................38

    **D.    IntegraSpec's construction would render the claims invalid under 35 U.S.C. § 305** ...................................40

    **E.    Reference in reexamination to measurement "along the longitudinal axis" is immaterial** .......................41

**IV.    IntegraSpec's accusations against Judge Smith Camp and Examiner A are improper and baseless** ...................43

**CONCLUSION** ........................................................45

**CERTIFICATE OF COMPLIANCE** .................................47

**CERTIFICATE OF SERVICE** ...........................................................48

# TABLE OF AUTHORITIES

## CASES

*Computer Docking Station Corp. v. Dell, Inc.*,
   519 F.3d 1366 (Fed. Cir. 2008) .............................................................30, 45

*DeMarini Sports, Inc. v. Worth, Inc.*,
   239 F.3d 1314 (Fed. Cir. 2001) ....................................................................27

*Intermatic Inc. v. Lamson & Sessions Co.*,
   273 F.3d 1355 (Fed. Cir. 2001), *vacated on other grounds*,
   537 U.S. 1016 (2002).....................................................................................29

*Laryngeal Mask Co. v. Ambu A/S*,
   618 F.3d 1367 (Fed. Cir. 2010) ....................................................................31

*Lighting Ballast Control LLC v. Philips Electronics N. Am. Corp.*,
   2014 U.S. App. LEXIS 3176 (Fed. Cir. Feb. 21, 2014)................................23

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ...........................................................23. 25, 28

*Netword, LLC v. Centraal Corp.*,
   242 F.3d 1347 (Fed. Cir. 2001) ....................................................................27

*NTP, Inc. v. Research In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ....................................................................24

*Omega Engineering, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ...............................................................29, 31

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...................................................24, 25, 27, 29

*Purdue Pharma L.P. v. Endo Pharms., Inc.*,
   438 F.3d 1123 (Fed. Cir. 2006) ...............................................................30, 39

*Quantum Corp. v. Rodime, PLC*,
   65 F.3d 1577 (Fed. Cir. 1995) ......................................................................40

*Rambus, Inc. v. Infineon Technologies AG*,
   318 F.3d 1081 (Fed. Cir. 2003) ....................................................................36

*ResQnet.com, Inc. v. Lansa, Inc.*,
    346 F.3d 1374 (Fed. Cir. 2003) ...................................................40

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001) ...................................................25

*Rhine v. Casio, Inc.*,
    183 F.3d 1342 (Fed. Cir. 1999) ...................................................40

*Terlep v. Brinkman Corp.*,
    418 F.3d 1379 (Fed. Cir. 2005) ...................................................29

*Vitronics Corp v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...................................................24

## STATUTES AND RULES

35 U.S.C. §305 (2011) ...........................................................40

Fed.R.App.P. 28(a) .............................................................2

Fed.R.App.P. 28(i) .............................................................1

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from the same civil action in the lower court was previously before this or any other appellate court. Appellees are aware of no other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## ANSWER BRIEF OF DEFENDANTS-APPELLEES REWARD WALL SYSTEMS INC. AND BUILDBLOCK BUILDING SYSTEMS, LLC

Defendants-Appellees Reward Wall Systems, Inc. (Reward Wall") and BuildBlock Building Systems, LLC ("BuildBlock") answer the Opening Brief of Appellant ("Blue Br.").

## STATEMENT OF JURISDICTION

Defendants-Appellees Reward Wall Systems, Inc. and BuildBlock Building Systems, LLC agree with the Jurisdictional Statement in Appellant's Blue Brief.

## STATEMENT OF THE ISSUES

Whether the district court properly construed the claim limitation "dimension" consistent with the claim language, specification, and amendments and arguments made by IntegraSpec during prosecution to mean "have the same length, breadth, area and volume, with only minor variations in dimension of up to about 10%. "

## JOINDER IN SECTIONS OF CROSS-APPELLANT'S BRIEF

Pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure, Defendant-Appellee Reward Wall adopts and joins in the Opening Brief of Defendant-Cross Appellant Nudura Corporation and Polyform A.G.P. Inc. (collectively "Polyform") and Defendant-Appellee Amvic Corporation

1

("Amvic") with respect to the Argument, section II, appearing on pages 32-56 of that brief, filed of even date herewith (the "Polyform/Amvic Red Brief").[1]

## COUNTER-STATEMENT OF THE CASE AND RELEVANT FACTS[2]

### I.      Introduction.

The technology in this case relates to insulated concrete panels and blocks (herein referred to as "ICFs"). ICFs are panels and blocks, usually made of polystyrene, that can be assembled at construction sites to create walls. ICFs have long been known and used in the construction industry. (A8; A1698; A1703.)  As a result, the patent at issue here, U.S. Patent No. 5,428,933 ("the '933 patent"), was prosecuted in a very crowded field.  (A8; A1698; A1703.)

---

[1]  Plaintiff-Appellant IntegraSpec accused two separate Reward Wall products of infringing the '933 patent – the iForm and the eForm.  The district court found that Reward Wall's eForm product could not infringe any claim of the '933 patent as they lacked the construed "substantially the same dimension" limitation.  (A4002.)  Those issues are captured and addressed in this brief.  The court also found, by separate order, that Reward Wall's eForm products could not infringe any asserted claim as they did not satisfy the construed "adjacent" limitation (A3802.)  Reward Wall has adopted and incorporated by reference the noted sections of the Polyform/Amvic Red Brief on the issue of the construction of the "adjacent" limitation to eliminate redundancy.  Reward Wall has the same issues relating to construction of the "adjacent" limitation as Nudura and Amvic.

[2] Reward Wall and BuildBlock merge the counter-statement of the case and facts for efficient presentation consistent with recent amendments to Fed.R.App.P. 28(a).

Appellant Phil-Insul, Corp., d/b/a IntegraSpec ("IntegraSpec") owns the expired '933 patent which is directed toward a specific configuration of ICF. More particularly, the '933 patent is directed to the interconnection means for the claimed ICF panels and blocks – referred to in the patent as "projections" and "recesses."

Prior art ICFs included construction panels with interconnecting means on their top and bottom edges. The interconnecting means allowed the panels to be stacked on top of one another to create molds for receiving liquid concrete. The prior art is replete with hollow, interconnecting blocks used as forms for pouring concrete walls. Two prior art patents, U.S. Patent Nos. 4,894,969 ("Horobin '969") and 5,123,222 ("Guarriello"), are of particular note here, as addressed below.

Horobin '969 disclosed an insulating block form for use in construction of concrete wall structures:



FIG. 1

3

(A1636.)

Guarriello disclosed foamed plastic hollow blocks connectable to one another used as poured concrete forms:



(A1629.)

IntegraSpec's appeal is directed to the district court's construction of two separate claim terms of the '933 patent. The first limitation at issue is: "wherein within each said pattern said recess of one row is adjacent said projection of the other row" (the "adjacent limitation"). (A1779.) The second limitation is directed to a specific characteristic of the claimed recesses and projections. This limitation is recited in claims 1 and 19 of the '933 patent as follows:

> "within each said pattern, each of said projections and recesses in each one of said at least two rows within said pattern *being of substantially the same dimension*. . ." (claim 1)

4

"within each said pattern, each of said projections and recesses in each one of said at least two rows *having substantially the same dimensions*. . ." (claim 19)

Below, the parties agreed that a single construction should be applied to both of these similarly worded limitations. (A422.) The district court agreed. (A1779.) As such, the claim terms set forth above will jointly be referred to herein as the "substantially the same dimension limitation."

During reexamination prosecution, the examiner rejected all of the original issued claims based upon the Guarriello patent. (*See* Section II(A)(2) *infra*.) In an attempt to distinguish the claims of the '933 patent over the Guarriello patent, IntegraSpec provided a clear and unequivocal definition for the term "dimension" that required each of the projections and recesses to have the same "length, breadth, area and volume." *Id.* IntegraSpec provided this definition because the projections and recesses of its design (below left) are the same size and shape, while the projections and recesses of the cited Guarriello patent (below right) did not have the same length, breadth, area and volume.

5



The Patent Office took IntegraSpec at its word and adopted the "length, breadth, area and volume" definition provided by IntegraSpec. (Section II(A)(2), *infra*.)    In fact, the Patent Office later rejected IntegraSpec's attempts to redefine "substantially the same dimension" so that it would be measured solely along the longitudinal axis, because this definition would have been broader than the original definition relied on by the Patent Office.  *Id.*  IntegraSpec conceded in the public record that the broadening amendment would have been improper and the issued '933 patent claims were limited to ICFs having projections and recesses with "substantially the same" length, breadth, area and volume as IntegraSpec had averred early on in the reexamination. *Id.*

Applying the well-established principles of claim construction, the district court construed the asserted claims consistently with IntegraSpec's amendments and arguments before the Patent Office.  (Section II(B), *infra*.)

6

Judge Smith Camp found that the claims could only cover ICFs with projections and recesses having the same measurable length, breadth, area and volume, with only minor variations in dimension of up to 10%.

Applying the properly construed claims, the district court ruled that all of the accused products of Reward Wall[3] and all of the accused products of BuildBlock do not infringe the claims of the '933 patent - either literally or under the doctrine of equivalents. Because the court found no infringement, it did not reach the issue of validity of the '933 patent. Section II(B), *infra.*

IntegraSpec asks this Court to reverse the district court's claim construction of "substantially the same dimension" and enforce the same construction that was denied by the Patent Office and then acknowledged as improper by IntegraSpec. IntegraSpec's efforts to recapture surrendered claim scope should be denied, and the district court's claim construction should be affirmed.

---

[3] As noted above, IntegraSpec accused two separate Reward Wall products of infringing the '933 patent – the iForm and the eForm. The district court found that Reward Wall's eForm products could not infringe any asserted claim as it did not satisfy the construed "adjacent" limitation. The district court subsequently found that Reward Wall's iForm products could not infringe any asserted claim as it did not satisfy the construed "substantially the same dimension" limitation.

## II.    Background

### A.    The '933 Patent and the Reexamination History

The '933 patent issued February 14, 1994[4] and is directed to specific designs for ICFs.



Figure 1 of the '933 patent (above left) discloses a preferred embodiment of an insulating construction block.  (A9, 4:38-45.)  Figure 2 (above right) illustrates an insulating panel according to another embodiment (A10, 5:16-17).  In these embodiments, each side wall **10, 12** (Fig. 1) and panel **34** (Fig. 2) has an interconnection means **16** on its top and bottom edges consisting of alternating projections **18** and recesses **20**.  (A9, 4: 43-45 and A10, 5:19-23.)

---

[4] The '933 patent expired on February 14, 2014.

1.    The Specification of the '933 Patent.

As noted above, the specification identifies "interconnection means" that are comprised of teeth-like projections and socket-like recesses. The projections are configured to fit within the recesses.

Throughout the specification, the projections and recesses are described in three-dimensional terms: they "are of substantially the same shape and dimensions" and, in one preferred form, "are of a rectangular configuration although it will be understood that any other configuration can be utilized, such as, for example, circular, square, triangular, polygonal, etc." (A8, 2:40-45) *(See also* 1:63- 2:3; 4:2-4; 4:49-53.)  All of the figures of the '933 patent provide depictions of the projections and recesses in a cubic shape of identical size. (A1, Figs. 1-7.)

2.    The First Reexamination.

In May 2001, IntegraSpec accused Reward Wall's iForm ICF products of infringing the then-existing claims of the '933 patent. (A204, ¶¶ 2-25.) In response, Reward Wall wrote to IntegraSpec and identified numerous prior art references, none of which were included in the '933

patent's original prosecution, that, individually or in combination, taught each and every element of each claim of the '933 patent.[5] (*Id.*)

On October 31, 2002, after waiting more than one year after receipt of Reward Wall's letter, IntegraSpec elected to voluntarily seek *ex parte* reexamination of the '933 patent. (A209-10, ¶¶ 13-16) IntegraSpec's reexamination request was granted, and an eight-plus year odyssey at the Patent Office ensued. (A12.) Each and every original claim of the '933 patent has either been cancelled or significantly amended.[6] (A13.)

a.    IntegraSpec's arguments during reexamination

On September 5, 2003, the assigned examiner issued his first office action rejecting original claim 1 of the '933 patent in light of US Patent No. 5,123,222 to Guarriello ("Guarriello").[7] (A1556.) The examiner found that the Guarriello reference showed "projections and recesses being of substantially the same dimension." (A1556.)

---

[5] Defendants-Appellees ask this Court to take judicial notice of a second reexamination proceeding for the '933 patent under is Ex Parte Reexamination Proceeding Number 90/012,022. Currently, IntegraSpec has cancelled claims 1, 3, 7 and 8. Claims 2, 5, 6, 9-11, 13-16, and 19-26 stand rejected. Claims 4 and 27 are objected to as depending on a rejected base claim. Claims 4 and 27 have not been confirmed.

[6] Some new claims were added during reexamination, including claim 19, which the parties agree substantially replicates claim 1 in respect to the "dimension" limitation at issue here. (A12.)

[7] In addition to claim 1, the examiner rejected claims 2-6, 8-12 and 14-18.

In January 2004, IntegraSpec responded to this initial office action.[8] (A1515.)  In attempting to distinguish Guarriello, IntegraSpec argued that its projections and recesses did not have "the same dimensions or even the same shape."  (A1520.)  IntegraSpec continued by noting that "[the projections and recesses of Guarriello] are thus not, under any interpretation, of 'substantially the same dimensions.'"  (A1520.)

On September 16, 2004, the examiner again rejected all then-pending claims, citing to Guarriello as showing "projections and recesses being of substantially the same dimension."  (A1508.)  On November 16, 2004, IntegraSpec responded to this second office action.  (A1453.)

In its response, and in order to navigate around the teachings of Guarriello, IntegraSpec endeavored to answer its self-imposed question of "what does 'substantially the same dimension' mean in the context of" the '933 patent.  (A1463.)  To establish the meaning of "dimension" as used in the '933 patent, IntegraSpec selected a suitable dictionary definition to convey its intended meaning and insisted that its ordinary meaning includes the "length, breadth, area and volume":

> "Thus, using ordinary dictionary definitions, the phrase 'said projections and recesses being substantially the same

---

[8] For technical reasons, IntegraSpec's response and proposed amendments filed November 4, 2003 had been rejected.

11

> dimension' necessarily means that the projections and recess
> have, essentially or in substance, the same measurable length,
> breadth, area and volume."

(A1464.)  IntegraSpec went on to ensure the examiner understood its

proffered definition and that the same was supported by the specification:

> "There is nothing in the specification that in any way teaches
> away from this interpretation; indeed, <u>the specification is
> entirely consonant with these definitions</u>."

(*Id.* (emphasis added).)

In making clear that the term "dimension" refers to measurements

made along multiple axes, IntegraSpec noted that "[i]t is axiomatic that

different shapes cannot have the same dimension." (A1467.)  Thus,

IntegraSpec specified a construction of "dimension" that includes all of the

measurements that define a particular shape and size (i.e., length, breadth,

area and volume).

On May 17, 2005, the examiner issued a final office action again

rejecting all submitted claims.  (A1416.)  Undeterred, IntegraSpec appealed

to the Board of Patent Appeals and Interferences ("BPAI").

### b.   Proceedings before the BPAI

On July 22, 2005, IntegraSpec submitted its opening brief to the

BPAI.  IntegraSpec provided a "summary of the invention" as follows with

respect to the "dimension" for the projections and recesses:

> "By designing the size and shape of the projections and recesses to be substantially the same, the interconnection means permits the forms to be engaged in a bi-directional or reversible manner."

(A1348.)   Most importantly, IntegraSpec did not withdraw its selected definition of "substantially the same dimension" or offer an alternative definition during its appeal.   Instead, IntegraSpec focused its efforts on trying to draw a distinction over Guarriello by taking the position that "substantially the same dimension" covers only variations in dimension that are unintentional:

> "In short, the difference in dimension of ribs and channels in the Guarriello '222 disclosure are not unintentional, inadvertent, minor variations, or 'substantially' the same as one another as recited in the limitation of the independent claims."

(A1370.)

On June 26, 2007, the BPAI issued its Decision on Appeal reversing the examiner's earlier rejections but issuing a new rejection based on the Horobin references.[9] (A1175.)  Referring to the prior art Horobin references, the Board stated that "…the use of projections and recesses having the same dimensions was known in the concrete block form art" (A1196) and that the projections and recesses of Horobin "are of substantially the same dimensions and each has the same square shape."  (A1201.)

---

[9] US Patent Nos. 4,894,969 and 4,884,382.

13

Unquestionably, the BPAI had adopted IntegraSpec's definition of "dimension" of encompassing "length, breadth, area and volume" when it noted that "Horobin teaches that the use of square projections and recesses of the same size was known in the insulating block art." (A1203.) The Board continued by noting that "one of ordinary skill in the art knows that a square peg can be rotated 90°, 180° and 270° and still fit in the square hole." (A1204.)

c.     Post-BPAI proceedings

On August 20, 2007, IntegraSpec elected to reopen prosecution of the '933 patent and offered several proposed amendments to the then-pending claims.

IntegraSpec advised that it had amended independent claims 1 & 19 by adding limitations with respect to the "size, shape, dimensions" and "location or position" of the projections and recesses. (A1117.) Specifically, IntegraSpec attempted to broaden the scope of the claims by limiting "substantially the same dimension" limitation so that it is only "<u>measured along the longitudinal axis</u>."[10]    (A858 (emphasis added).)    On

---

[10] IntegraSpec filed revised amendments on February 5, 2008 as its August 20, 2007 filing did not comply with PTO rules. Similar fillings were made on April 24, and July 30, 2008 for non-compliance with PTO rules.

November 20, 2008, the examiner again rejected all pending claims in the '933 patent based upon IntegraSpec's July 31, 2008 filing.

On March 15, 2010, the examiner contacted IntegraSpec's counsel to address the unpatentable state of the claims. As the Interview Summary explained, "examiner notifies applicant of the language of claims 1, 11, 19 to <u>'measured along the longitudinal axis' should be deleted as they appear to broaden the claims</u>'[.]"  (A602 (emphasis added).)

The very next day, IntegraSpec conceded this point:

> "This supplemental amendment is submitted following certain objections raised by Examiner Phi A regarding earlier amendments submitted in a Response on Aug. 7, 2009 that were deemed to have broadened the original claims of the '933 patent.  <u>In Independent Claims 1, 11 and 19 the previously submitted phrase 'measured along the longitudinal axis' has been deleted</u>[.]"

(A619 (emphasis added).)

A few weeks later, IntegraSpec filed an unsolicited Second Supplemental Response to address the March 15, 2010 interview by noting that it believed "that this interview was initiated by the Examiner as a result of rejection of the claims on the grounds that certain claims exceeded the scope of the broadest claim in the '933 patent when issued."  (A597.) In voluntarily addressing this issue, IntegraSpec again confirmed the accuracy of the statements in the examiner's March 15, 2010 Interview Summary,

stating that, "[o]ut of an abundance of caution, [it] wishe[d] to make clear" that the examiner's interview statements were "correct in all respects and those changes were incorporated" into the amendments "filed on March 16, 2010." (*Id.*) Thus, IntegraSpec conceded again that the deletion of the term "measured along the longitudinal axis" was necessary to avoid broadening the claims.  Only then were independent claims 1 and 19 allowed.

### d.   The Notice of Allowance.

On May 25, 2010, the examiner issued a Notice of Intent to Issue Ex Parte Reexamination Certificate.  (A588.)  Although the lengthy reexamination focused almost entirely on whether the prior art disclosed projections and recesses having "substantially the same dimension," the examiner indicated that the ultimate reason for allowance was that "the prior art does not provide sufficient motivation to modify Guarriello *et al*. to show the end projection in one row flush with at least a portion of one of the end planes."  (A590 (emphasis added).)  Thus, the point of novelty in the '933 patent is that the claimed ICF members have a tooth (or projection) that is flush with the end wall of the panel.[11]  IntegraSpec did not object to the stated reasons for allowance.

---

[11] This noted inventive aspect of the device claimed in the '933 patent is shown in Fig. 1, above, identifying the panel end walls as elements **10** and **12**.

Eventually, on September 21, 2010, an *ex parte* reexamination certificate issued with three independent claims – claims 1, 11 and 19. Importantly, only claims 1(as amended) and 19 (new) are at issue in this appeal.[12] (A12.)

## B.    The District Court's Claim Construction

The district court construed "substantially the same dimension" to mean "have the same measurable length, breadth, area and volume, with only minor variations in dimension up to about 10%." (A1803.)   As the district court found, "the prosecution history makes clear that [IntegraSpec] limited the meaning of 'substantially the same dimension' to include more than just the longitudinal axis of an ICF." (A1800.)

The district court rejected IntegraSpec's "attorney mistake" argument and found that "[e]ven if [IntegraSpec] made an incorrect statement when distinguishing the '933 Patent from the prior art, '[a] person of reasonable intelligence' would have relied on the statement [that "dimension" as used in the '933 patent means "length, breadth, area and volume"]; it is not contrary to the claim language, the specification or the prosecution history." (A1800-01.)

---

[12] Claim 11 of the '933 patent was not asserted by IntegraSpec against any party below.

The district court further found that "a strong inference may be drawn from the prosecution history that the patent office recognized Claims 1 and 19 would be invalid if Claims 1 and 19 were amended to state that 'dimension' referred only to the longitudinal axis of an ICF, and [IntegraSpec] expressly stated that it believed this statement to be correct in all respects and deleted those words from Claims 1 and 19." (A1801.)

## C. Bidirectionality and Reversibility

IntegraSpec suggests that its invention "provides a novel interconnecting means referred to as 'bidirectional and reversible' that permits the blocks to be stacked with minimal manipulation." (Blue Br. at p.2.) IntegraSpec tells this Court that "…bidirectionality and reversibility is not merely an embodiment of the invention - it is an essential characteristic of the invention." (*Id.* at 11.) IntegraSpec then contends that its proposed construction is appropriate because "only length [of the projections and recesses] is necessary to achieve bidirectional and reversible capability, the objective of the invention." (*Id.* at 4.)

Contrary to IntegraSpec's suggestions, Mr. Philippe, the sole inventor of the '933 patent, did not invent the bidirectional and/or reversible ICF. In short, bidirectional and reversible ICFs have been known and used for

decades, and IntegraSpec admitted as much several times during the first reexamination of the '933 patent.

IntegraSpec advised the examiner that Guarriello, admitted prior art to the '933 patent, disclosed ICFs that are both bidirectional and reversible ("Patentee agrees that the Guarriello reference discloses forms that are bi-directional as well as reversible"). (A1033 and A1033.) Further, the inventor of the '933 patent and CEO of IntegraSpec, Mr. Philippe, provided sworn testimony in the first reexamination averring that the Guarriello reference disclosed ICFs that were both bidirectional and reversible ("…Guarriello achieves bi-directionality and reversibility using pairs of projections and recesses…"). (A998.)

In addition, in response to a then-pending rejection of all claims in the '933 patent, IntegraSpec solicited and submitted a declaration of Ron Ardres, CEO and Chairman of ICF manufacturer ReddiForm. (A978.) There, Mr. Ardres testified that ReddiForm was the owner of the Guarriello patent, that the ReddiForm ICF products are of the same design as what is claimed and disclosed in Guarriello, and that the ReddiForm ICF devices are both bidirectional and reversible. (*Id.* at p. 4.) According to the Ardres declaration submitted by IntegraSpec, the ReddiForm ICF is "universal …

that is, it will interlock with another form in a bidirectional and reversible manner …." (A981.)

Thus, on one hand, IntegraSpec supports its proposed claim construction by taking the position that "only length [of the projections and recesses] is necessary to achieve bidirectional and reversible capability, the objective of the invention." (Blue Br., at p.4.) On the other hand, IntegraSpec admits that the Guarriello patent, which has projections and recesses of varying length, area and shape provides an ICF design that is both bidirectional and reversible.

Bidirectionality and reversibility may be a claimed limitation of the '933 patent, but it is not a point of novelty and cannot be used as the basis for a construction that looks only to the length of the projections and recesses.

## **SUMMARY OF ARGUMENT**

During reexamination, the patentee provided clear and unequivocal arguments in an attempt to distinguish over the Guarriello patent. IntegraSpec urged that the term "dimension" be interpreted by the examiner to mean that each of the projections and recesses have the same "length, breadth, area and volume." IntegraSpec provided this definition because the projections and recesses of its design are the same size and shape, while the

projections and recesses of the cited Guarriello patent were different shapes and did not have the same length, breadth, area and volume. The patentee supported the definition with arguments about the importance of the size and shape of the projections and recesses and acknowledged that the definition was entirely consonant with the specification of the '933 patent.

The prosecution history of the first reexamination indicates that the examiner and the BPAI adopted and relied on the definition provided by IntegraSpec. As evidence of this reliance, the examiner properly refused IntegraSpec's later attempts to remove the limitations requiring the same breadth, area and volume because it would impermissibly broaden the claim. IntegraSpec conceded in the public record that the broadening amendment was improper and the '933 patent claims were limited to ICFs having projections and recesses with "substantially the same" length, breadth, area and volume.

IntegraSpec's proffered definition of "substantially the same dimension" was not an attorney mistake. The definition was created very carefully and purposefully, with multiple citations to the '933 patent's specification for support. IntegraSpec knowingly and voluntarily selected its definition of the term "dimension" to mean "length, breadth, area and

21

volume" in order to navigate around claim rejections based on the prior art Guarriello patent.

Despite its past failures, IntegraSpec nonetheless asked the district court for the same construction of the "dimension" limitation that had been refused by the Patent Office and that IntegraSpec had previously acknowledged was improper. Judge Smith Camp denied IntegraSpec's renewed attempt to broaden the claims and properly held that the claims could only cover ICFs with projections and recesses having the same measurable length, breadth, area and volume, with only minor variations in dimension of up to 10%.

Now IntegraSpec seeks to resurrect the broader limitation it unsuccessfully pressed on at least five prior occasions and which it expressly and repeatedly withdrew to survive the rejection of its claim. This is not a case in which the Court must determine whether a proposed construction is *similar* to surrendering and disavowing statements made during the prosecution history. In this case, the Plaintiff-Appellant is asking for the same construction that was rejected by the Patent Office and then acknowledged as improper by the patentee.

Judge Smith Camp got it right and held IntegraSpec to the definition it used to secure allowance of the claims. The intrinsic evidence of the '933

patent requires the term "substantially the same dimension" to mean "having the same measurable length, breadth, area and volume, with only minor variations in dimension of up to about 10%." The district court's claim construction should be affirmed.

## **ARGUMENT**

IntegraSpec appeals the district court's construction of the claim term "substantially the same dimension." Interestingly, IntegraSpec offers no particular definition here for either term but rather provides unsupported criticism of Judge Smith Camp's construction of these limitations. Further, IntegraSpec has not challenged any other rulings by the district court, including those granting summary judgment of literal or equivalents infringement under the district court's constructions. Thus, the only issues for this Court to decide are whether the district court's claim constructions were correct.

## I. Standard of Review

Claim construction is reviewed *de novo. Lighting Ballast Control LLC v. Philips Electronics N. Am. Corp.*, No. 2012-1014, 2014 U.S. App. LEXIS 3176 (Fed. Cir. Feb. 21, 2014); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). This Court has instructed that claims are to be interpreted consistent with their meaning to one of ordinary

skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Id*. at 1312 (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A proper claim construction analysis must also take into account the patent's intrinsic evidence. *Phillips,* 415 F.3d at 1319. The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Id*. at 1314-17.

## II.    The District Court Correctly Construed the Term "Substantially the Same Dimension"

To determine the meaning of a claim term, the court must look to "those sources available to the public that show what a person of ordinary skill in the art would have understood [the] disputed claim language to mean." *NTP, Inc. v. Research In Motion, Ltd*., 418 F.3d 1282, 1293 (Fed. Cir. 2005) (quoting *Phillips*, 415 F.3d at 1314). "'Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id*. As is more fully set forth below, each of these sources shows that the district court properly determined that the term "substantially the same dimension" means, in the context of the '933 patent, "having the same measurable

length, breadth, area and volume, with only minor variations in dimension of up to about 10%." The intrinsic record compels the district court's construction.

## A. The Words of the Claims Support the District Court's Construction.

Claim construction analysis begins "with the language of the claims." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341-42 (Fed. Cir. 2001). However, "the claims … do not stand alone." *Phillips*, 415 F.3d at 1315. Instead, "they are part of a fully integrated written instrument," and must be read in view of that fully integrated written instrument. *Id*. (quoting *Markman*, 52 F.3d 978).

As noted above, the focus of claim construction is on the subject term's ordinary meaning. *Phillips*, 415 F.3d at 1313. Without question the meaning of "substantially the same dimension" is principally guided here by the eight-plus year reexamination prosecution history focused on the term. However, the district court's construction of "having the same measurable length, breadth, area and volume, with only minor variations in dimension of up to about 10%" is certainly not contrary to the plain language of the claims.

Issued claim 1 requires:

> 1. In a bi-directional and reversible insulating construction member having substantially planar ends and top and bottom edges and interconnecting means on said top and on said bottom edges, the improvement wherein each said top interconnecting means and each said bottom interconnecting means has a pattern,
>
> each pattern comprising at least two longitudinally extending rows of alternating, continuous, immediately adjacent projections and recesses, extending continuously along the entire length of said top and bottom edges, the end projection in one row flush with at least a portion of one of said end planes, within each said pattern each of said projections and recesses in each one of said at least two rows within said pattern being of substantially the same dimension, … .

(A13 (emphasis added).)

Similarly, issued claim 19 requires:

> 19. A bi-directional and reversible insulating construction block comprising:
> a pair of substantially parallel side members having top and bottom edges and substantially planar ends;
> joining means interconnecting said side members;
> interconnecting means on said top and bottom edges, each said interconnecting means including substantially identical patterns including at least two longitudinal rows of alternating rectangular projections and recesses in each of said patterns, each row in each said pattern comprising more than one projection and more than one recess, with such alternating projections and recesses being continuous along the entire length of said rows and contiguous one with another, the end projection in one row flush with at least a portion of one of said end planes, wherein said recess of one row in each said pattern is adjacent said projection of the other row in the same said pattern, within each said pattern, each of said projections and

26

> recesses in each one of said at least two rows having
> substantially the same dimensions; … .

(A13-14 (emphasis added).)

Importantly, IntegraSpec does not suggest that the district court's construction is inconsistent with the ordinary and customary meaning of "substantially the same dimension." Nor could it. From the definition cited by IntegraSpec during the reexamination, it is clear that the ordinary and customary meaning of "dimension" includes the "measurable spatial extent of any kind, as length, breadth, area, volume." (A1464.) In distinguishing the prior art, IntegraSpec itself pointed to the shape of the projections and recesses of the Guarriello patent noting that "[i]t is axiomatic that different shapes cannot have 'the same dimension.'" (A1467.)

## B. The Specification Supports the District Court's Construction.

A patent's "claims are directed to the invention that is described in the specification" and "they do not have meaning removed from the context from which they arose." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). As this Court has instructed, the specification is highly relevant to claim construction. *Phillips*, 415 F.3d at 1316.

To be sure, IntegraSpec did not use or define the term "dimension" inconsistent with its ordinary meaning. *DeMarini Sports, Inc. v. Worth, Inc.*

239 F.3d 1314, 1323 (Fed. Cir. 2001). Throughout the specification, the projections and recesses are described in three-dimensional terms: they "are of substantially the same shape and dimensions" and, in one preferred form, "are of a rectangular configuration, although it will be understood that any other configuration can be utilized, such as, for example, circular, square, triangular, polygonal, etc." (A8, 2:40-45) (*See also* 1:63- 2: 3; 4:2-4; 4:49-53) Taken together, "length, breadth, area and volume" define the size and shape of the interconnection means of the '933 patent. As IntegraSpec itself touted during the first reexamination of the '933 patent, "[t]here is nothing in the specification that in any way teaches away from this interpretation; indeed, the specification is entirely consonant with these definitions." (A1464.)

The court's construction of "length breadth, area and volume" is clearly and unequivocally consistent with the description of the projections and recesses found in the '933 patent's specification and the statements of the inventor.

## C. The Prosecution History Compels the District Court's Construction.

"To construe claim language, the court should . . . consider the patent's prosecution history." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995). The prosecution history often informs the

28

meaning of the claim language in question by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005)(quoting *Phillips*, 415 F.3d at 1317). The doctrine of prosecution disclaimer prohibits patentees from using claim construction to recapture claim scope disclaimed during prosecution. *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003). To determine the scope of the claim, a court should look at all of the prosecution history, including statements made during reexamination, which "are retroactively applied to limit the scope of a claim limitation as of the issue date of the patent, not the date those arguments were made." *Intermatic Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1367 (Fed. Cir. 2001), *vacated on other grounds*, 537 U.S. 1016 (2002).

Simply stated, the reexamination prosecution history here compels the construction of the "substantially the same dimension" limitations to mean "within each said pattern, each of said projections and recesses in each one of said at least two rows within said pattern have the same measurable length, breadth, area and volume." This is precisely how the patentee construed this limitation during reexamination to distinguish the prior art Guarriello reference. The BPAI accepted the patentee's interpretation, and

relied on it to reverse the examiner's rejection of the pending claims over Guarriello. Thereafter, the examiner relied upon it to prohibit IntegraSpec's attempt to broaden the claims so that "dimension" is measured along a single axis, i.e., "measured along the longitudinal axis."

### 1. IntegraSpec's Definition.

During reexamination and in an effort to avoid cited prior art, IntegraSpec stated that "the phrase 'said projections and recesses being of substantially the same dimension' necessarily means that the projections and recesses have, essentially or in substance, the same measurable length, breadth, area and volume." (A1464.) There was no mistake in IntegraSpec's comments. It defined the term clearly and deliberately.

At the time, all claims of the '933 patent stood rejected. One of the rejections of then claim 1 was based upon the Guarriello reference, which the examiner found disclosed "projections and recesses being of substantially the same dimension." (A1508.) In response, IntegraSpec clearly characterized the term "substantially the same dimension" in a way to overcome this prior art rejection. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008)(quoting *Purdue Pharma L.P. v. Endo Pharms., Inc.,* 438 F.3d 1123, 1136 (Fed Cir. 2006)).

30

IntegraSpec cannot now recapture through claim construction specific meanings disclaimed during prosecution.  *Omega Eng'g,* 334 F.3d at 1323.

IntegraSpec does not now suggest, nor can it, that other dictionaries were not available at the time that may have provided a different definition that could have been used to support a different contention.  To the contrary, IntegraSpec purposefully selected the cited Oxford dictionary and, in fact, went further to define "dimension" in three-dimensional terms – length, breadth, area and volume.  It selected its definition and clearly stated so in the prosecution history.  *Laryngeal Mask Co. v. Ambu A/S*, 618 F.3d 1367, 1372 (Fed. Cir. 2010).

IntegraSpec seems to argue that the dictionary it selected and used during reexamination somehow had an incorrect definition for "dimension." According to IntegraSpec, its counsel should not have included "and" when joining "area" and "volume." However, even if the conjunctive "and" was omitted (if that is, in fact, the claimed mistake) the proposed definition would still include "area" and "volume," both of which connote something more than a measurement along a single (e.g., longitudinal) axis.

As noted above, IntegraSpec's definition is consistent with the description of the invention found in the '933 patent's specification.  More importantly, IntegraSpec never expressly withdrew its definition of

"dimension" referring to the three-dimensional aspects of the claimed projections and recesses. IntegraSpec should now be held to that definition.

        2.    <u>IntegraSpec's confession of its efforts to impermissibly broaden claim scope.</u>

In March 2010, IntegraSpec conducted an interview with the examiner, who advised that attempting to define dimension as being measured "along the longitudinal axis" would impermissibly broaden the scope of the claims. The interview summary explained: "*<u>examiner notifies applicant of the language of claims 1, 11, 19 to 'measured along the longitudinal axis' should be deleted as they appear to broaden the claims[.]</u>*" (A602 (emphasis in original).)

The reexamination prosecution history makes clear that the examiner had already adopted the original construction of "substantially the same dimension" limitation proposed by IntegraSpec in 2004, which IntegraSpec had never withdrawn. That definition required measuring the projections and recesses in length, breath, area and volume. Reducing that measurement to length alone would undoubtedly broaden claim scope.

The patentee then expressly abandoned the limitation "measured along the longitudinal axis:"

> "This supplemental amendment is submitted following certain objections raised by examiner Phi A regarding earlier claim amendments submitted in a Response on August 7, 2009 that

32

were deemed to have broadened the original claims of the '933 patent.  In Independent Claims 1, 11 and 19 the previously submitted phrase 'measured along the longitudinal axis' has been deleted[.]"

(A619.)

A few weeks later, IntegraSpec filed an unsolicited Second Supplemental Response to address the March 15, 2010 interview by noting that it believed "that this interview was initiated by the Examiner as a result of rejection of the claims on the grounds that certain claims exceeded the scope of the broadest claim in the '933 patent when issued." (A597.)  In voluntarily addressing this issue, IntegraSpec again confirmed the accuracy of the statements in the examiner's March 15, 2010 Interview Summary, stating that, "[o]ut of an abundance of caution,[ it] wishe[d] to make clear" that the examiner's interview statements were "correct in all respects and those changes were incorporated" into the amendments "filed on March 16, 2010." (*Id*.)  Thus, IntegraSpec conceded again that the deletion of the term "measured along the longitudinal axis" was necessary to avoid broadening the claims. Taken at its word, IntegraSpec agreed that its proposed amendment would impermissibly broaden claim scope and thus withdrew it from consideration before it could be formally rejected.

At the end of the reexamination, the examiner interpreted the phrase "substantially the same dimension" to mean exactly what IntegraSpec

33

originally argued in the reexamination – that "substantially the same dimension" means substantially *the same measurable length, breadth, area and volume.*

### 3. The BPAI relied on IntegraSpec's original definition

The BPAI also understood that, as used by IntegraSpec, projections and recesses of "substantially the same dimension" refer to three dimensional objects. Particularly, the Board found that in the Horobin references, "…the use of projections and recesses having the same dimensions was known in the concrete block form art" (A1196) and that the projections and recesses of Horobin "are of substantially the same dimensions and each has the same square shape." (A1201.) The Board's focus on the dimensions and shape – the three-dimensional aspects – of the projections and recesses depicted in the Horobin references shows that the Board had accepted IntegraSpec's earlier established definition of "dimension" to be three-dimensional in nature.

The BPAI was, consistent with IntegraSpec's definition, viewing the Horobin references as having projections and recesses being substantially the same in "length, breadth, area and volume," thus citing those references to reject the '933 patent's then-pending claims.

Thus, the prosecution history of the first reexamination of the '933 patent squarely supports the interpretation of the "substantially the same dimension" limitation that was adopted by the district court, the Defendants-Appellees, the BPAI and the examiner at the USPTO. This interpretation is consistent with the specification of the '933 patent and the limitations from the claims at issue on this appeal.

### III. IntegraSpec's Arguments Regarding the Proper Construction of "Substantially the Same Dimension" Are Improper and Should Be Rejected

Each of IntegraSpec's asserted errors in the district court's construction of "being of substantially the same dimension" are directed to activities that occurred during the first reexamination of the '933 patent. IntegraSpec cannot point to support for its proposed construction of the term in the claims themselves or in the patent's specification. Put simply, IntegraSpec's retrospective, litigation-inspired arguments of the scope of the claims are entitled to no weight. Instead, the intrinsic evidence refutes each argument presented by IntegraSpec.

### A. There was no "attorney mistake" when IntegraSpec selected its proposed definition of "dimension"

IntegraSpec now argues that the district court erred in her construction by improperly focusing on an "attorney error." This after-the-fact attorney argument is baseless and should be rejected.

35

First, IntegraSpec's selection of "length, breadth, area and volume" to define "dimension" was not an attorney mistake as it now suggests. Rather, it was thoughtful, purposeful and clearly intended. It was consistent with the specification which teaches the importance of the projections and recesses of "being of substantially the same shape and having substantially the same dimensions." (A9, 4:49-53.)

IntegraSpec cites no cases to support its "attorney mistake" argument. IntegraSpec's definition of "dimension" is not facially incorrect, *Rambus Inc. v. Infineon Technologies AG*, 318 F.3d 1081, 1090 (Fed. Cir. 2003), and, as IntegraSpec itself advised, the definition is "entirely consonant" with the '933 patent's specification. (A1464.)

As Judge Smith Camp found, "[t]he prosecution history does not support [IntegraSpec]'s contentions." (A1798, n.15.) If this had been a mistake, IntegraSpec would have expressly identified the mistake in the record during the years that followed in reexamination. It did not. There is simply no evidence in the record to support a finding that this definition constituted attorney error.

Even if it had been a "mistake" as IntegraSpec now contends, the mistake would not permit a different construction of "dimension" because IntegraSpec tried to broaden its definition late in reexamination. It failed

and then acquiesced in the examiner's determination that "same dimension" could not refer solely to the length of the projections and recesses. The retrospective, litigation-induced characterization of the original definition as a "mistake" cannot result in a change to the meaning of the claims under the '933 patent after the examiner, the BPAI and the public very reasonably relied on the original, well-founded definition.

Whether IntegraSpec can now point to revised or alternative dictionary definitions is of no consequence. It was IntegraSpec that hand crafted its definition and used it to argue over pending rejections based on the Guarriello reference. Where a patentee places a reasonable definition into the written record, the public cannot be expected to independently consider whether the definition had been changed in a later edition of the dictionary. The public must be able to rely upon the statements made by the patentee during the prosecution of the application.

## B. IntegraSpec cannot escape its confessions in reexamination

IntegraSpec is bound by its admitted, voluntary withdrawal of the term "measured along the longitudinal axis" in order to secure allowance of independent claims 1 and 19 in the face of an imminent rejection, coupled with its comments regarding the correctness of the examiner's invalidity positions. IntegraSpec now attempts to rely on the fact that the examiner

did not officially "reject" IntegraSpec's amendment adding "measured along the longitudinal axis." However, as the record shows, there was plainly no need for the examiner to reject the proposed amendment.

IntegraSpec had an interview with the examiner about the patentability of the then-pending claims and amendments. Following the interview, and before the examiner issued his rejection, IntegraSpec voluntarily withdrew the offensive phrase "measured along the longitudinal axis." (A619.) Once deleted, there was nothing for the examiner to "reject."

There is no merit to IntegraSpec's suggestion that the procedural posture of this interchange during the reexamination was inconsequential. IntegraSpec's unsolicited comments to the examiner regarding the correctness of his broadening opinion are now binding upon IntegraSpec. The reexamination certificate itself demonstrates the broadening impact of the withdrawn phrase:  no claim was allowed to issue with the phrase "measured along the longitudinal axis" to modify "dimension," and IntegraSpec did not improve its position by hurriedly withdrawing the proposed amendment rather than waiting for it to be rejected.

**C.   IntegraSpec is estopped from recapturing claim scope it disavowed during reexamination**

Although IntegraSpec did not ask this Court to adopt a specific construction of "substantially the same dimension," it is nonetheless

38

instructive to consider the construction proposed by the Plaintiff-Appellant in the district court. IntegraSpec asked the court to construe the "substantially the same dimension" limitation "as measured along the longitudinal axis." (A1663.) This is, of course, the same interpretation of this claim limitation that was refused during reexamination.

IntegraSpec is estopped from attempting to recapture what it gave up during prosecution of the '933 patent. When a patentee "explicitly characterizes an aspect of his invention in a specific manner to overcome prior art," he has made "a clear and unmistakable disavowal of scope." *Purdue Pharma L.P. v. Endo Pharm., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). The reexamination prosecution history illustrates that, to overcome the Guarriello reference, IntegraSpec construed the dimension limitation to mean: each of "said projections and recesses . . . have … the same measurable length, breadth, area and volume." (A1464 (emphasis added).) This characterization of the "dimension limitation" was a clear disavowal of claim scope because it was made to overcome Guarriello and was relied on by the BPAI and the examiner.

This disavowal of scope was confirmed later when IntegraSpec acquiesced in the examiner's rejection of "measured along the longitudinal axis" to obtain allowance of the claim. IntegraSpec unequivocally

39

acknowledged the examiner's position on the broadening amendment and further agreed with him stating in a supplemental amendment that the examiner was "correct in all respects," deleting and abandoning the proposed "measured along the longitudinal axis" modifier.

In addition, the prosecution history reveals that IntegraSpec did not object to the examiner's reasons for allowance. The law is clear that when a patentee fails to object to an examiner's reasons for allowance, the patentee has made a clear disavowal of scope. *See ResQnet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1381-82 (Fed. Cir. 2003).

### D. IntegraSpec's construction would render the claims invalid under 35 U.S.C. § 305.

The construction proposed by IntegraSpec is also improper because it would render the subject claims invalid. It is a well-known principle of claim construction that "claims should be so construed, if possible, as to sustain their validity." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999). Under 35 U.S.C. § 305 (2011), "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." Therefore, broadening of a claim during reexamination will render the claim invalid. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995).

IntegraSpec's proposed construction would have broadened the scope of the claim by removing the measurements along all axes except the longitudinal axis. The examiner properly refused to accept this broader scope of the claims because it would render the claims invalid. Nonetheless, IntegraSpec continues to seek the same construction that would render its claims invalid.

### E. Reference in reexamination to measurement "along the longitudinal axis" is immaterial

IntegraSpec inaccurately asserts that it argued "over a hundred times" that the term dimension involves the length of the projections and recesses "measured along the longitudinal axis." (Blue Br., at 65) To the contrary, a review of Exhibit No. 7 (A1675) to IntegraSpec's Opening Brief for Early Claim Construction (A1646) reveals that many of IntegraSpec's cited arguments do not even refer to measurements taken along the longitudinal axis. In addition, IntegraSpec tried and failed several times to make appropriate submissions during the reexamination proceeding, and several of its "amendments" were rejected for failing to comply with PTO rules. As such, IntegraSpec has vastly over-counted its efforts.

More fundamentally, IntegraSpec's arguments that the prior art failed to disclose projections and recesses having the same length did not constitute a retraction or modification of its proffered definition of "dimension" as

41

requiring an evaluation of length, breadth, area and volume. IntegraSpec simply attempted to distinguish the prior art by identifying one difference (length) in the multidimensional axes included within its definition. Arguing that the prior art did not disclose projections having the same length did not revoke the other aspects of the dimension definition established by IntegraSpec (e.g., same breadth, area and volume).

After realizing that its arguments had not changed the understanding of "dimension" held by the examiner and the BPAI, IntegraSpec attempted to restrict the definition with the amendatory language "as measured along the longitudinal axis." (A858.) When this amendment was not permitted, IntegraSpec conceded that the removal of claim limitations by amendment is not permitted where the amendment would broaden the scope of the claim in reexamination. (A619.) The original definition of "substantially the same dimension" remains intact.

Finally, the number of times that IntegraSpec unsuccessfully "attempted" to broaden the scope of its claims during reexamination by adding or arguing "along the longitudinal axis" is not relevant. What is relevant is that when IntegraSpec made it unambiguously clear that it was adding the limitation "along the longitudinal axis" to modify "substantially the same dimension," the examiner did not allow the claim to issue because

that limitation would have impermissibly broadened the claim. IntegraSpec unambiguously acquiesced in that rejection. (*Id.*).

## IV. IntegraSpec's accusations against Judge Smith Camp and Examiner A are improper and baseless

IntegraSpec shamelessly attempts to muddy the waters by accusing Judge Smith Camp of impartially construing the claim terms at issue here. IntegraSpec submits that the "strained and patently erroneous claim construction order belies the self-exculpation that the judge was impartial in her construction order." (Blue Br. at 68.) Not surprisingly, IntegraSpec cites no evidence to support its drive-by contentions. Rather, it appears, as with much of its opening brief, that lawyer argument is all that is needed.

Judge Smith Camp recused on her own motion five months *after* she had issued her claim construction order -- and IntegraSpec's irresponsible, implicit suggestion that she had reason to do so five months earlier but failed to discharge such a judicial duty has no support in the record. Indeed, IntegraSpec does not even have support for an assertion that Judge Smith Camp was required to recuse when she did, rather than exercising conservative discretion in IntegraSpec's favor -- which IntegraSpec now seeks to exploit with utterly baseless innuendos of judicial impropriety. Simply stated, there is no evidence that Judge Smith Camp harbored any ill will against IntegraSpec or its counsel at any stage of the proceedings below,

and her *sua sponte* recusal five months after issuing her claim construction order to avoid any suggestion of impropriety demonstrates just the opposite.

Further, IntegraSpec got the proverbial second-bite at the claim construction apple when it defended Defendants-Appellees' separate motions for summary judgment. Without question, IntegraSpec's arguments against the entry of summary judgment were principally directed at seeking reversal of Judge Smith Camp's claim construction order. The then-assigned judge, Judge Joseph F. Battalion, elected not to disturb Judge Smith Camp's well-reasoned claim construction order. (A4008.)

Similarly disturbing is IntegraSpec's aspersions cast on the assigned reexamination examiner's handle of the English language. IntegraSpec asserts that "…[f]rankly, Phi Dieu Tran A, the examiner, had limited verbal English skills particularly in telephone conversations." (Blue Br., at 67.) No doubt, IntegraSpec now challenges the examiner's language skills as a dodge for its own confession that efforts to limit the defined three-dimensional term "dimension" to being measured "along the longitudinal axis" would impermissibly broaden the claims. IntegraSpec's new undocumented assertions through attorney argument, for the first time on appeal, are procedurally improper and unsupported by the record.

## <u>CONCLUSION</u>

The reexamination prosecution history itself compels the district court's construction of the "substantially the same dimension" limitation. The Defendants-Appellees and the district court simply adopted the construction of the "dimension" limitation propounded by IntegraSpec itself at nearly every relevant stage of patent prosecution -- from early in reexamination, throughout reexamination by the examiner and the BPAI, and finally by its explicit confirmations of the same construction at the end of the long reexamination proceeding.  IntegraSpec is not entitled to now endorse, for litigation, a construction which was rejected and which it abandoned within that reexamination process.

Moreover, the lower court's construction of the "substantially the same dimension" limitation is consonant with the fundamental public notice function of our patent system.  IntegraSpec's strategy of adopting one construction to obtain allowance of claims and then switching to another construction to enforce the claims has been denounced and strictly prohibited by this court. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374-75 (Fed. Cir. 2008) ("claims should not be construed one way in order to obtain their allowance and in a different way against accused infringers").  IntegraSpec's fifth effort, through this litigation, to

45

impermissibly broaden the scope of its '933 patent's claims should be denied.

Respectfully Submitted,

s/David M. Sullivan
_____
David M. Sullivan
Harvey D. Ellis, Jr.
Crowe & Dunlevy, P.C.
20 North Broadway, Suite 1800
Oklahoma City, Oklahoma 73102
Telephone: 405.235.7700
Fax: 405.239.6651
david.sullivan@crowedunlevy.com
harvey.ellis@crowedunlevy.com

**ATTORNEYS FOR APPELLEE
BUILDBLOCK BUILDING SYSTEMS,
LLC**

s/Michael R. Annis
_____
(*Signed by filing attorney with consent of
attorney*)
Michael R. Annis
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: 314.345.6000
Fax: 314.345.6060
mike.annis@huschblackwell.com

**ATTORNEY FOR APPELLEE
REWARD WALL SYSTEMS, INC.**

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because:

    ☒    this brief contains 8,861 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii),

   or

    ☐    this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because:

    ☒    this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Times New Roman,

   or

    ☐    this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

                       s/David M. Sullivan

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 24th day of March, 2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system.  Based on the electronic records currently on file, the Clerk of Court will transmit a Notice of Docket Activity to the following ECF registrants:

Paul Adams, Esq.
The Adams Law Firm
3800 Osuna Boulevard, NE, Ste. 2
Albuquerque, NM 87109
adamspatentlaw@gmail.com

Michael Thomas Cooke, Esq.
Brett Michael Pinkus
Friedman, Suder & Cooke
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, TX 76102
mtc@fsclaw.com
pinkus@fsclaw.com

Rachel C. Hughey
Aaron M. Johnson
Katherine E. Muller
Christopher J. Sorenson
Merchant & Gould P.C.
3200 IDS Center
80 S. Eighth Street
Minneapolis, MN 55402
rhughey@merchantgould.com
ajohnson@merchantgould.com
kmuller@merchantgould.com
csorenson@merchantgould.com

Kori Ann Bagrowski
James Sobieraj
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Drive, Ste. 3600
Chicago, IL 60611
kbagrowski@brinksgilson.com
jrs@brinkshofer.com

      s/David M. Sullivan